Neil **TEMPLETON** et al., Plaintiffs-
Appellees,

v.

**DIXIE COLOR PRINTING CO., Inc.,**
et al., Defendants,

and

**National Labor Relations Board,**
**Intervenor-Appellant.**

No. 29921.

United States Court of Appeals,
Fifth Circuit.

May 26, 1971.

Rehearing Denied and Rehearing En
Banc Denied July 28, 1971.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Chief, Special Litigation, N. L. R. B., Washington, D. C., Constangy & Powell, J. R. Goldthwaite, Jr., Atlanta, Ga., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Ian D. Lanoff, Atty., N. L. R. B., for intervenor-appellant.

Robert McD. Smith, C. A. Powell, III, Birmingham, Ala., for plaintiffs-appellees; Lange, Simpson, Robinson & Somerville, Birmingham, Ala., of counsel.

Before CLARK, Associate Justice,[*] and GEWIN and RONEY, Circuit Judges.

CLARK, Associate Justice:

The narrow question here is whether a United States District Court has jurisdiction to order the National Labor Relations Board to hold a representation election on a concededly valid employee decertification petition which it has held in abeyance for over three years on the ground that to grant the petition would collide with its general policy known as the "blocking charge practice." Under this prescription representations elections are not conducted by the Board during the existence of unremedied unfair labor practices. The trial court found that under the peculiar facts here jurisdiction did exist and that the situation could only be remedied by directing that the Board proceed with an election within 45 days. 313 F.Supp. 105 (N.D. Ala.1970).

We agree that jurisdiction is present under the decision in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), but we believe that the order is inappropriate in that it summarily directs that an election be held. Section 9(c) (1) of the Act commands the Board to first "investigate such petition and if it has reasonable cause to believe that a question of representation * * * exists shall provide for an appropriate hearing * * * If the Board finds * * * that such a question of representation exists, it shall direct an election. * * *" 29 U.S.C. § 159(c) (1). While heretofore the Board's interposition of the blocking charge has been the sole impediment to an election, the Board now has apprehensions as to an "improper atmosphere" for an election, the "proper reinstatement of strikers," and the composition of the appropriate bargaining unit, etc. While these apprehensions may be as

[*] Associate Justice, United States Supreme Court, Retired, sitting by designation.

fanciful as they are late, we have some reluctance to order an election in a case where the Board has neither investigated nor actually found reasonable cause to believe that a question of representation exists. We believe that more effective administration militates in favor of remand of the case with directions that an order be entered that the Board proceed forthwith to perform its duties under this section of the Act.

## I

*The facts are not in dispute.* They have been fully set out in the District Court's scholarly opinion and need not be recited in detail here. It is sufficient to point out that in 1964 the International Typographical Union claimed to represent a majority of the employees (26 of a total of 38) of Dixie Color Printing Company. There had been no election and the Company refused to recognize the Union, whereupon a strike was called which was participated in by 23 of the employees. On the basis of unfair labor practice charges that were filed by the Union, a complaint was issued and on February 14, 1966 the Board found that the Company had coerced and restrained employees to undermine their support of the Union and had refused to bargain. The Board ordered the Company to cease the unfair labor practices, to recognize and bargain with the Union, and to reinstate the unfair labor practice strikers. Dixie Color Printing Corp., 156 NLRB 143. The Court of Appeals for the District of Columbia Circuit ordered the Board's decree enforced. Dixie Color Printing Co. v. N. L. R. B., 371 F.2d 347 (1967). The Company renewed the bargaining, reinstated the strikers, and claims that it ceased the unfair labor practices. No contract was reached and the bargaining ceased in October, 1967.

By January, 1968, the number of Dixie employees had increased to 73 and on the 9th of the month 51 of them filed a petition with the Board's Regional Office for the Tenth Region to decertify the Union. The Regional Director summarily dismissed the petition on the basis of the blocking charge practice of the Board. Plaintiffs-appellees filed with the Board a request for review of the Regional Director's dismissal of the decertification petition. The request for review was "held in abeyance" on the basis of the Board's blocking charge rule.

This suit was filed against Dixie and the Union as a class action by four employees of Dixie on February 28, 1968. They were opposed to the Union as their bargaining agent and acted for all other employees of like persuasion which, according to the decertification petition, accounted for 70% of the employees. The Board was permitted to intervene and on its motion the case was dismissed on the ground that it was an effort to enjoin collective bargaining, citing Garner v. Teamsters, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953). On an amended complaint seeking direct relief against the Board for holding plaintiffs' decertification petition in abeyance, the Board's motion to dismiss for lack of jurisdiction was denied and the election order entered.

Meanwhile, the Union had filed an application with the Board requesting that it file contempt charges against Dixie in the United States Court of Appeals for the District of Columbia. On August 26, 1968, over a year later, the Board filed a petition for contempt, the grounds being that Dixie had failed to give seniority to some 17 former strikers "to their former or substantially equivalent positions." The Board determined that as a result of the institution of these contempt proceedings, further processing of the decertification petition should be held in abeyance. The contempt citation is still pending.

It is well to state at the outset what is not involved here. First, the application before the Board is not an *employer* decertification petition, nor is there any claim of employer collaboration, influence or pressure with reference to the filing of it. Neither is the *bona fides* of

the appellees questioned, nor the class that they represent, nor the number composing the same. The employer is not involved in this dispute; nor has it suffered any loss by reason of delay; indeed, delay has played into the hands of the employer and caused great detriment to the employees. The Union is not pursuing its bargaining rights, nor has it made claim to representation of a majority of the present employees. Indeed, the Union has announced through its counsel that if an election were ordered it would withdraw;[1] and, though it has not had the support of a majority of the employees for over three years, it has never been decertified and the employees have been prevented from choosing their own bargaining representative all of this time. It is not clear why the "blocking" unfair labor practice charges have yet to be disposed of by the Board.

## II

■ The Court has jurisdiction. Subject matter jurisdiction is conferred by 28 U.S.C. § 1337, since this is a civil action arising under an act regulating commerce. The questions are whether jurisdiction may be assumed, consistent with the review provisions of the National Labor Relations Act, and whether equitable relief was properly granted. See Boire v. Miami Herald Publishing Co., 343 F.2d 17, 20 (C.A. 5, 1965), cert. denied, 382 U.S. 824, 86 S.Ct. 56, 15 L. Ed.2d 70.

■ It is true, as the Board contends, that generally a federal district court lacks jurisdiction to review determinations of the Board in a representation proceeding. The general power of a court of appeals to review the actions of the Board is defined by § 10(f), 29 U.S. C. § 160(f), which is limited to final orders granting or denying relief. There is here no such order for review.

But at least since 1940 the Supreme Court has recognized that there might be circumstances where jurisdiction was present. In A. F. of L. v. N. L. R. B., 308 U.S. 401, 412, 60 S.Ct. 300, 306, 84 L.Ed. 347 (1940), it indicated that where "unlawful action of the Board has inflicted an injury" to a right which Congress had created "for which the law, apart from the review provisions of the * * * Act, affords a remedy" then jurisdiction would be present to enforce that right. And, again, three years later the Court warned in Switchmen's Union v. National Mediation Board, 320 U.S. 297, 300, 64 S.Ct. 95, 96, 88 L.Ed. 61 (1943), that where "the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control." And since that time the courts in several cases have found jurisdiction present and have exercised it, notably Leedom v. Kyne, 358 U.S. 184, 190, 79 S.Ct. 180, 185, 3 L.Ed. 2d 210 (1958), where the Court said that it "cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." There, Section 9(b) (1) of the Act had given professional employees the right to vote separately on whether they would be included in a proposed bargaining unit that included both professional and non-professional employees, but the Board refused to take a vote and included the professional employees in the unit. The Court held that a federal District Court had jurisdiction to vacate such a determination by the Board "made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.*, at 188.

Another "exception" to non-reviewability of § 9 proceedings was recognized

1. "Mr. Goldthwaite: No, it won't; [there will not be an election] the Union would withdraw under the present facts. The facts are the facts as stated by Mr. Smith; there would be no occasion for an election, unless there was a change of the status of the employees."

**1068**

in McCulloch v. Sociedad National, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), where the Supreme Court recognized jurisdiction to review an election order because of the international overtones involved in the Board's application of the Act to foreign maritime crews. It is significant that the employer was accorded standing to pursue injunctive relief even though the Board's certification proceeding had not yet resulted in a final order, and even though there was no claim that the Board violated a specific statutory prohibition.

Further, federal courts have assumed jurisdiction where there was a showing that Board action violated the constitutional rights of the plaintiff. Fay v. Douds, 172 F.2d 720 (C.A.2, 1949); Milk & Ice Cream Drivers Union v. McCulloch, 113 U.S.App.D.C. 156, 306 F.2d 763 (1962); Leedom v. Int'l Bro. Elec. Wkrs., 278 F.2d 237 (C.A.D.C. 1960).

The foregoing cases are consistent with non-labor cases in which the Supreme Court has sustained the jurisdiction of district courts to entertain suits for relief where statutory relief against agency action was absent or inadequate. Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912).

Nor is the case of Boire v. Greyhound Corporation, 376 U.S. 473, 481, 84 S.Ct. 894, 898, 11 L.Ed.2d 849 (1964), to the contrary. There the Court held that *Kyne* was "not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law." This was in keeping with the mandate of Congress that there could be a "review in the courts only after the election has been held and the Board has ordered the employer to do something predicated

upon the results of the election." *Id.*, at 479, quoting from 79 Cong.Rec. 7658. However, the District Court has made no plenary review of a Board order here, nor is there any claim of an erroneous assessment of the facts by the Board.

The only issue here is the arbitrary use of the blocking charge practice of the Board to hold the petition of the appellees for decertification in abeyance for over three years.[2] Section 7 of the Act explicitly gives employees the right "to bargain collectively through representatives of their own choosing, and * * * to refrain from any or all of such activities." 29 U.S.C. § 157. In order to make certain that this right is fully protected, Congress directed the Board in mandatory language that *"whenever* a petition shall be filed" alleging that the currently recognized bargaining agent is no longer a representative of the employee (as defined by the Act) "the Board *shall* investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists *shall* provide for an appropriate hearing upon due notice. * * * If the Board finds * * * that such a question of representation exists, it *shall* direct an election. * * *" 29 U.S.C. § 159(c) (1) (Emphasis Added).

We are unable to read the Court's decision in Leedom v. Kyne, *supra*, as limited to the negative command or prohibition there involved. A party is as aggrieved of the failure of the Board to exercise its statutory responsibility, as by an act of the Board contrary to an express prohibition. See Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch, 116 U.S.App.D.C. 243, 322 F.2d 993, 997 (1963). Further, the Supreme Court has not hesitated to grant relief where the Board has wrongfully and arbitrarily refused to exercise its jurisdiction. In Office Employees International Union v. N. L. R. B., 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957),

2. The Board's "blocking charge" practice has been widely criticized. See N.L.R.B. v. Minute Maid Corp., 283 F.2d 705, 710 (C.A.5, 1960); N.L.R.B. v. Gebhardt-Vogel Tanning Co., 389 F.2d 71, 75 (C.A.7, 1968).

the Court held that the Board's refusal to take jurisdiction over labor unions acting as nonprofit organization employers was arbitrary and beyond its power. *Id.*, at 320. Similarly in Hotel Employees Local No. 255, etc. v. Leedom et al., 358 U.S. 99, 79 S.Ct. 150, 3 L.Ed.2d 143 (1958), the Court held that the Board's policy of not exercising jurisdiction over the hotel industry was equally arbitrary. The fact that the Board there dismissed the complaints, whereas it has refused to act here, is not controlling. See also McCulloch v. Sociedad National, 372 U.S. 10, 16–17, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963).

██ The short of the matter is that the Board has refused to take any notice of the petition filed by appellees and by interposing an arbitrary blocking charge practice, applicable generally to employers, has held it in abeyance for over 3 years. As a consequence, the appellees have been deprived during all this time of their statutory right to a representative "of their own choosing" to bargain collectively for them, 29 U.S.C. § 157, despite the fact that the employees have not been charged with any wrongdoing. Such practice and result are intolerable under the Act and cannot be countenanced. "The purpose of the Board is to protect the bargaining rights of employees, not the bargaining rights of union." N. L. R. B. v. Ben Duthler, Inc., 395 F.2d 28, 34 (C.A. 6, 1968). See N. L. R. B. v. S. S. Logan Packing Co., 386 F.2d 562, 564 (C.A. 4, 1967). The union cannot avoid the consequence of the loss of its majority status by the mere filing of unfair labor practice charges against the employer. Nor does the filing of such unproved charges relieve the Board of its statutory duty to consider and act on a petition for decertification. N. L. R. B. v. Minute Maid Corp., 283 F.2d 705, 710 (C.A. 5, 1960).

### III

The Board has ignored its responsibility contrary to a specific mandate of the Act and thereby worked injury to the statutory rights of the employees. The Board cites many authorities approving the use of the blocking charge practice, but none are apposite for the reason that none involve employees who are seeking an election, but rather unions or employers which have adequate avenues of review under Section 10 of the Act. A certification can be judicially reviewed under Sections 9(d) and 10 in a subsequent unfair labor practice proceeding. See May Dep't Stores v. N. L. R. B., 326 U.S. 376, 66 S.Ct. 203, 90 L. Ed. 145 (1945). This procedure is available to an employer by refusing to bargain with a certified representative, but it is unavailable to an unsuccessful union, and to the employees here. See Cox, The Major Decisions of the Supreme Court, October Term 1958, A.B.A. Sect. of Labor Relations Law, 1959, reprinted in Gellhorn & Byse, Administrative Law: Cases and Comments 441 (4th ed.1960). The circumstances here are thus arguably more "exceptional" than those in Leedom v. Kyne, *supra*. If the association in *Kyne* bargained on behalf of the professional employees alone, ignoring the certified unit, this would violate § 8(b) (3) and be subject to review under § 10(f).

[4] The reason for circumscribing judicial review in representation matters is to avoid dilatory tactics which would postpone the commencement of bargaining when the employer really had no legitimate objections to the conduct of the election and merely wished to delay bargaining. See H.R.No.972, 74th Cong., 1st Sess. 5–6; S.Rep.No.573, 74th Cong., 1st Sess. 5–6; Leedom v. Kyne, 358 U.S. 184, 191, 79 S.Ct. 180, 3 L.Ed. 2d 210 (dissenting opinion); Boire v. Miami Herald Publishing Co., 343 F.2d 17, 20 (C.A. 5, 1965), cert. denied, 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70. These considerations are not present here. The application before the Board is not an employer decertification petition; it is plainly not made for the purpose of delay, or to thwart the exercise of rights protected under the Act.

Here there is no administrative remedy to correct a clear wrong that under-

mines the employees' paramount right. Attrition and delay on the part of the Board charged by Congress with protecting this right have frustrated it. There is no indication that any relief will be forthcoming from the Board in the foreseeable future. The primary purpose of the Act is to protect *employee* rights. To deny to employees the right to determine whether or not they will be represented is tantamount to castrating § 7, the heart of the Act.

■ Our decision is based on the particular circumstances presented here, and we do not reach the issue of the extent to which the blocking charge might be validly applied—*e. g.*, against employers, or under what circumstances the Board might justifiably exercise its discretion in refusing to process a representation petition. *Cf.* Local 1545, Un. Bro. Carpenters, etc. v. Vincent, 286 F.2d 127, 131 n. 4 (C.A. 2, 1960) ("contract-bar" rule). We only hold that, in the instant case, the Board's refusal to act is an abuse of discretion and is arbitrary.

### IV

It is unlikely that there are past unfair labor practices which have a present impact upon the fair and free choice of bargaining representatives by the employees. It has now been some seven years since the unfair labor practices occurred; if some of the striking employees have not been returned to work, or to their full seniority rights, this can be accomplished by the Board without delaying the consideration of the petition for decertification. Indeed, at one time appellees requested a consolidation of all matters which was denied. Nor is the expertise of the Board supplanted under the order that this Court enters. The Board is merely required to proceed with the consideration of the decertification petition as provided by the Act. Such action will not interfere with the jurisdiction of the Court of Appeals for the District of Columbia Circuit. It may proceed with the motion in contempt and issue such order it deems appropriate as to Dixie.

We deem it unnecessary to consider in detail the alternative grounds upon which the District Court based its action as to relief.[3] The judgment is vacated and the case is remanded with instructions that the Board be directed to proceed promptly under § 9(c) (1) of the Act to process the decertification petition of the appellees as required by law.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

3. Appellees alternately argue that the district court had jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 704 and 706(1), which provide that where the statutory method of review is either absent or inadequate, the remedy of an aggrieved party is in a district court to "compel agency action unlawfully withheld or unreasonably delayed." We do not rely upon this Act because the district courts have traditionally had equitable power in cases such as the present. See Interstate Commrece Commision v. U. S. ex rel. Humboldt Steamship Co., 224 U.S. 474, 32 S.Ct. 556, 56 L.Ed. 849 (1912) ; Leedom v. Kyne, *supra.* However the A.P.A. has been construed as providing equivalent jurisdiction. Deering-Milliken v. Johnson, 295 F.2d 856 (C.A.4, 1961). See N.L.R.B. v. Rutter-Rex Mfg. Co., 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969). Section 6(a) of the Act, 5 U.S.C. § 555(b) requires that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." It would thus seem that there is, alternatively, jurisdiction under the Administrative Procedure Act here.