**Algie V. SURRATT et al., Plaintiffs-Appellees,**

v.

**NATIONAL LABOR RELATIONS BOARD, Defendant-Appellant.**

**No. 71–2815.**

United States Court of Appeals, Fifth Circuit.

June 20, 1972.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., William J. Rains, Regional Atty., Region 10, N.L.R.B., Atlanta, Ga., Glen M. Bendixsen, Chief, Special Litigation, N.L.R.B., Washington, D. C., Peter G. Nash, Gen. Counsel, Herbert Fishgold, Atty., N.L.R.B., for defendant-appellant.

C. V. Stelzenmuller, Gilbert E. Johnston, Birmingham, Ala., J. Leon Adair, Atlanta, Ga., Algie V. Surratt, Birmingham, Ala., for plaintiffs-appellees; Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., of counsel.

Before GEWIN, COLEMAN and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

In our opinion the disposition of this appeal is controlled by the principles enunciated in Templeton v. Dixie Color Printing Company, 5 Cir., 1971, 444 F.2d 1064. The opinion in that case was authored by Mr. Justice Clark (retired), sitting by designation as a Judge of this Court. There was a petition for rehearing en banc. Upon a poll of all Judges of this Court, the petition for rehearing was denied, 444 F.2d 1070 (1971).

We need not recopy here the decision reported in *Templeton*.

We simply allude to the following language of that opinion:

"A party is as aggrieved of the failure of the Board to exercise its statutory responsibility, as by an act of the Board contrary to an express prohibition." 444 F.2d at 1068.

"Further, the Supreme Court has not hesitated to grant relief where the Board has wrongfully and arbitrarily refused to exercise its jurisdiction." 444 F.2d at 1068.

"The short of the matter is that the Board has refused to take any notice of the petition filed by the appellees and by interposing an arbitrary blocking charge practice, applicable generally to employers, has held it in abeyance for over 3 years. As a consequence, the appellees have been deprived during all this time of their statutory right to representation 'of their own choosing' to bargain collectively for them, 28 U.S.C., § 157, despite the fact that the employees have not been charged with any wrongdoing. Such practice and result are intolerable under the Act and cannot be countenanced. 'The purpose of the Board is to protect the bargaining rights of employees, not the bargaining rights of union' (citations omitted). The union cannot avoid the consequence of the loss of its majority status by the mere filing of unfair labor practice charges against the employer. Nor does the filing of such

unproved charges relieve the Board of its statutory duty to consider and act on a petition for decertification (citation omitted)." 444 F.2d at 1069.

Since October 31, 1969, following a secret ballot election conducted under the supervision of the Regional Director, Local Union 253, International Brotherhood of Electrical Workers, AFL–CIO (herein the Union) has been certified by the National Labor Relations Board as the exclusive bargaining representative for the following collective bargaining unit of employees employed by Newhouse Broadcasting Corporation (herein the Company) in Birmingham, Alabama:

> All employees employed in the Engineering Department of WAPI–TV–AM–FM, but excluding all office clerical employees, guards and supervisors as defined in the Act.

Thereafter, bargaining ensued but, at all times material herein, there has been no collective bargaining contract between the Company and the Union.

On or about December 11, 1970, plaintiffs, representing ten of the twenty employees in the unit, filed with the Board's Regional Office a petition for an election in Board Case No. 10–RD–414, to determine whether the Union should be decertified, alleging that the Union no longer represented a majority of the employees. Thereafter, the Board's Regional Director administratively determined that the petition sought an election in an appropriate unit, that the Company's operations affected commerce and met the Board's jurisdictional standards, and that the petition was supported by the requisite showing of interest among employees in the bargaining unit.

Twelve days later the Union filed unfair labor practice charges in Board Case No. 10–CA–8771, charging the Company with violating § 8(a) (5) and (1) of the Act by "[o]n or about June 22, 1970, and thereafter . . . refus[ing] to bargain collectively with the undersigned Union, a labor organization chosen by a majority of its employees," further action on plaintiffs' election petition was suspended, and the unfair labor practice charge investigated. The Regional Director investigated the charge on behalf of the General Counsel, and determined that a complaint should issue on the violation charged.

The Regional Director on February 3, 1971, dismissed the petition for a decertification election.

On plaintiffs' appeal to the Board from the dismissal of this election petition, the Board, on March 9, 1971, noting that the General Counsel had issued the unfair labor practice complaint against the Company, affirmed the Regional Director's dismissal solely on that basis. On March 17, 1971, the Board denied plaintiffs' motion for reconsideration.

Thereafter, on April 15 and May 11, 1971, two more complaints were issued in Board Case Nos. 10–CA–8928 and 10–CA–8972 on the basis of charges filed by the Union on March 29 and April 28, 1971, which alleged further bargaining violations by the Company, including unlawful withdrawal of recognition of the Union at the conclusion of the first year of the Union's certification. The two complaints were consolidated with the earlier complaint and came on for hearing before a trial examiner the week of August 16, 1971.

Meanwhile, on June 2, 1971, plaintiffs-appellees, alleging that they represented a majority of all employees in the unit, instituted suit in the District Court against the Board. The complaint alleged, *inter alia*, that the Board, contrary to § 9(c) (1) of the Act, had wrongfully and arbitrarily refused to exercise its jurisdiction over their decertification petition. They asked that the Board be required to investigate further, consider and act upon their petition, and that until then the Board be enjoined from conducting the scheduled unfair labor practice hearing.

On July 26, 1971, the District Court issued its Memorandum Opinion and Order declining to enjoin the unfair labor practice proceeding, but holding that it had jurisdiction over the action and to direct the Board to process the decertification petition under the authority of this Court's decision in Templeton v. Dixie Color Printing Company, *supra*. Accordingly, the Court ordered the Board to investigate the decertification petition, and if it finds that there is reasonable cause to believe that a question of representation affecting commerce exists, to proceed promptly with a hearing on the petition and thereafter to enter such order as is appropriate, "including ordering due conduct of an election if such question of representation is held to exist and if such election can be reconciled with the statutory policy of the NLRA requiring the employer to bargain collectively with the chosen representative of the bargaining unit of which plaintiffs are a part".

On August 5, 1971, the Board filed a notice of appeal, and requested the District Court to stay its order pending appeal. On September 7, 1971, the court below entered an order denying the Board's motion for a stay. Thereafter, on September 14, 1971, the Board filed a motion with this Court for a stay of the order below pending appeal. On October 1, 1971, that motion was denied.

The Board seeks quite energetically to distinguish this case, both factually and legally, from the situation presented in *Templeton*. It is true that in *Templeton* the delay was much longer than here encountered but that is a difference only in degree, not in controlling principle. Nor do we perceive any other legally significant distinction.

■ The Board had a clear duty under § 9(c) (1) of the Act to consider, investigate, and act upon the decertification petition. That action, had it been taken, would have been reviewable here. Instead, by the mechanical application of a blocking charge, brought by the Union which the employees said no longer represented them, the employees were disarmed.[1] Their petition was dismissed. This, we think, is what *Templeton* proscribed.

■■ We emphasize, of course, that injunctions should be issued sparingly and only in those cases where the rights of the parties clearly conferred by the National Labor Relations Act, 29 U.S.C. § 151 et seq. are being seriously infringed under the facts presented. The crucial considerations in this case are that the rights of the employees would be seriously jeopardized if we sustained the Board action merely to avoid a collision with the Board's general "blocking charge practice". More specifically, the Board should not be allowed to apply its "blocking charge practice" as a *per se* rule without exercising its discretion to make a careful determination in each individual case whether the violation alleged is such that consideration of the election petition ought to be delayed or dismissed. We are of the view that the record before us clearly demonstrates a failure to give that careful consideration to the petition of the employees for the decertification election.

The motion of the appellees to dismiss the appeal is denied.

The judgment of the District Court is Affirmed.

INGRAHAM, Circuit Judge (specially concurring):

The Board phrases the issue on appeal as "whether the district court had subject matter jurisdiction to review the

1. At oral argument it developed that the charges filed by the union had been heard by a trial examiner and a recommended decision filed by the examiner. By agreement of counsel for the parties to this appeal, a copy of the trial examiner's decision has been furnished to the Court. After a full hearing the trial examiner concluded that the allegations of the complaint charging unfair labor practices were not sustained by the evidence and that all of the allegations of the complaint should be dismissed. The Board has not passed upon the trial examiner's conclusions and recommended order.

Board's dismissal of plaintiffs-appellees' petition for decertification election and whether, in any event, the Board properly granted injunctive relief setting aside the Board's dismissal of the petition." In terms of subject matter jurisdiction the district court properly took submission of plaintiffs-appellees' complaint. The plaintiffs allege that the NLRB had mechanistically applied its blocking charge principle to deny ten named plaintiffs an application for a decertification election pursuant to § 9(c) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. The plaintiffs allege the Board's action was arbitrary, capricious and mechanistic so as to deny them due process of law and the free exercise of their rights under the Act.

In the face of plaintiffs-appellees' allegations of improper Board conduct and refusal to investigate their 9(c) allegations, the district court properly denied the Board's F.R.C.P. Rule 12(b) 6 motion to dismiss for lack of subject matter jurisdiction. Leedom v. Kyne, 358 U.S. 184, 190, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 16–17, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); Templeton v. Dixie Color Printing Co., 444 F.2d 1064, 1069 (5th Cir., 1971).

This does not suggest that the district court supplant the Board's exercise of discretion, only that the Board exercise it. The Board's dogmatic reliance on the blocking charge principle cannot escape judicial scrutiny invoked under 28 U.S.C. § 1337 and 5 U.S.C. §§ 704 and 706(1).

The vice in the Board's processes in the instant case is in its reliance on the issuance by the regional director of an unfair labor practice charge. NLRB Field Manual ¶11730. But as the district court noted, the Board's application of the doctrine in the Manual does not squarely comport to its announcements in United States Coal and Coke Co., 3 NLRB 398 (1937); Mar-Jac Poultry Co., 136 NLRB 785 (1962); In re Terminals, Inc., 161 NLRB 1215 (1966). The court below, relying on the Board's *Terminal* case, observed:

"The defendant Board argues that it has dismissed plaintiffs' decertification petition in the face of a prima facie meritorious unfair labor practice charge, which if true would preclude presentation of a question of representation. It is a prima facie meritorious charge, says the Board, because it alleged an unlawful refusal to bargain on the part of the employer on and after June 22, 1970, well within a year of the Union's decertification in October of 1969, and if it is true, the decertification year must be extended and the employer required to continue bargaining with the Union regardless of the Union's majority status. This contention may have been implicitly rejected by the *Templeton* holding, since in that case the Board had argued that the certification year should be automatically extended, and it was so extended, from the time the unfair labor practice should be remedied, and since the Court there ordered the Board to investigate the decertification petition in spite of the fact that there were pending contempt proceedings instituted by the Board against the company for failure to obey its order and the order of the Court of Appeals for the District of Columbia to remedy its unfair labor practices. But even if the fact situation in the instant action can be distinguished from that in the *Templeton* case, the Court finds that the underlying principles of the *Templeton* holding apply with equal force to the questions presented here. The Board's own explanation of the blocking charge practice is that it provides a 'logical and effective means of reconciling the statutory policies requiring the employer to afford the employees' chosen representative a minimum opportunity at effective collective bargaining, and the right of employees to a reasonable opportunity to challenge

the representative status of an incumbent union.' The latter consideration is embodied in Section 7 of the Act, which explicitly gives employees the right to 'bargain collectively through representatives of their own choosing, and . . . to refrain from any or all of such activities.' 29 U.S.C. § 157. The *Templeton* Court found that protection of this statutory right of employees was the main consideration of the Congress when it drafted its directions to the Board for handling decertification petitions in mandatory language. The aforementioned statutory policies cannot possibly be reconciled if the Board utilizes its blocking charge practice to deny an election solely because of pending unfair labor practice proceedings with no investigation of the surrounding circumstances and no consideration of to what extent the alleged loss of a Union majority has been affected by the alleged unfair labor practices. The Board itself has often made this point:

> While the Board does not normally conduct representation elections in the fact of unresolved (8) (a) (2) or (5) charges, it is discretionary with the Board to determine, on the facts in each case, whether an election at a given time and under prevailing circumstances will effectuate the policies of the Act. The Board has departed from its general practice and directed elections in the face of such unresolved 8(a) charges where the alleged unfair labor practice conduct is related, at least in part, to the unresolved question of representation.

In re Terminals, Inc., 161 NLRB 1215, 1223–1224 (1966) (footnotes omitted).

Thus, in granting relief here, the Court is not encroaching upon the discretionary power of the Board, but merely directing it to exercise its discretion as the law explicitly requires it to. There obviously can be expected considerable overlap between the scope of the investigation and subsequent hearing under the decertification petition and the scope of the investigation and hearing on the unfair labor practice charges. Such an overlap is inevitable whenever interacting statutory policies must be reconciled. With affairs in their present posture, that is, with the Board acting only on the unfair labor practice charges while plaintiffs' decertification petition has been dismissed, the Board does not have before it the allegations and facts needed for such a reconciliation."

The Board, plaintiffs argue, is guilty of having one law for Athens and another for Rome. Citing *Kroger Co.*, 173 NLRB 60 (1968), Plaintiffs suggest that the Board does not hesitate to exercise its discretion in 9(c) cases where such action, even in the face of a "blocking charge", favors the unions.

Neither *Templeton* nor our decision in this case requires that the United States District Courts exercise or supplant the Board's discretion. The Board alone is the administrative agency vested by the National Labor Relations Act. The court's function in the *Templeton* case is merely to require the Board to exercise that discretion by looking to the circumstances of the case itself before refusing to override the blocking charge principle. The difference is one of kind—between a mechanistic rejection of a petition for decertification election, and the exercise of the Board's considered discretion in rejection of the same petition.