NEWPORT NEWS SHIPBUILDING
AND DRY DOCK COMPANY,
Plaintiff,

and

The Designers Committee To Decertify,
Intervening Plaintiff,

v.

The NATIONAL LABOR RELATIONS BOARD and John H. Fanning, Howard Jenkins, Jr., John A. Penello, and John C. Truesdale, in their capacity as members of the National Labor Relations Board, and William C. Humphrey as Regional Director, Region 5, National Labor Relations Board, Defendants,

and

United Steelworkers of America, AFL–CIO–CLC, Intervening Defendants.

No. 80–16–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

May 8, 1980.

Shannon T. Mason, Jr., Mason, Gibson, Cowardin & Spencer, Newport News, Va., Andrew M. Kramer, Seyfarth, Shaw, Fairweath & Geraldson, Washington, D. C., for plaintiffs.

Richard Wright West, West, Stein, West & Smith, Newport News, Va., for The Designers Committee.

Aileen Armstrong, Deputy Asst. Gen. Counsel for Sp. Litigation, N. L. R. B., Washington, D. C., John F. Kane, Asst. U. S. Atty., Norfolk, Va., C. T. Neale, III, Newport News, Va., Richard J. Brean, Carl B. Frankel, Pittsburgh, Pa., for defendants.

## ORDER

CLARKE, District Judge.

On January 25, 1977, the United Steelworkers of America, Local 8417, was certified by the NLRB as the bargaining representative of the design unit of the Newport News Shipbuilding and Dry Dock Company. This unit was defined as:

All Senior Designers, Designers, Junior Designers, Technical Aides, Senior Design Aides, Design Aides, and Apprentices (Assigned to the Design Departments) employed in the company's Design Departments and Operations on Washington and Marshall Avenues in Newport News, Virginia, excluding all office and clerical employees not assigned to or supporting Design Departments, Inspectors, Optical Detailers and all other employees in said department and operations and excluding

confidential employees, guards and supervisors as defined in the Act.

Bargaining between the Union and the Shipyard began on January 27, 1977, and continued until March 31, 1977. During this period, the Shipyard proposed to alter the description of the unit, substituting the words "draftsmen" and "drafting" wherever the words "designers" and "design" appeared in the certification. This proposal was embodied in the Shipyard's "final offer" submitted to the Union on March 31, 1977. The Union's members overwhelmingly rejected this offer and voted to commence a strike the following day, April 1, 1977.

As a result of the Shipyard's conduct, the National Labor Relations Board found that the Shipyard violated §§ 8(a)(1) and (5) of the National Labor Relations Act by insisting, to the point of impasse, on redefining the scope of the employee bargaining unit. The Board ordered the Shipyard to cease and desist from this unfair practice. This determination was affirmed by the Fourth Circuit Court of Appeals on July 25, 1979. *Newport News Shipbuilding and Dry Dock Co. v. N.L.R.B.*, 602 F.2d 73 (4th Cir. 1979).

Although the Shipyard sought review of the Board's cease and desist order, the plaintiff's uncontradicted affidavits reveal that beginning on November 9, 1977, the Shipyard dropped its proposal to substitute the words "draftsmen" and "drafting" for "designers" and "design," the cause of the

unfair practice charge, and resumed negotiation with the Union. Between November 8, 1977, and July 28, 1978, the Shipyard and the Union met and negotiated on 42 days. These negotiations culminated in a full contract offer, submitted by the Shipyard on July 28, 1978. This offer contained the Union's description of the bargaining unit, not the Shipyard's proposal. The Union rejected this contract offer.

Thereafter, the Shipyard and the Union met and negotiated on at least two other occasions before the Fourth Circuit entered its decision enforcing the Board's order. Further negotiations between the parties took place on five occasions following the Fourth Circuit's decision.

On August 1, 1978, the Designers Committee to Decertify, a committee of employees in the designated unit, filed a decertification petition pursuant to section 9(c)(1)(A)(ii) of the National Labor Relations Act, 29 U.S.C. § 159(c)(1)(A)(ii),[1] with Region Five of the Board, seeking to decertify the Steelworkers as their bargaining representative. William Humphrey, the Regional Director, summarily dismissed this petition on August 3, 1978, citing the then pending appeal of the Board's cease and desist order and Shipyard's failure to comply with this order as reasons for this dismissal. Mr. Humphrey, however, did not specify in what respect the Shipyard failed to comply with that order, which required the Shipyard not only to cease its insistence upon relabeling the bargaining unit, but

---

1. Section 9(c)(1) of the Act, 29 U.S.C. § 159(c)(1), provides:

Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in subsection (a) of this section, or (ii) assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in subsection (a) of this section: or

(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in subsection (a) of this section;

the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

also to reinstate certain employees and to post an appropriate notice for 60 consecutive days. This action was affirmed by the Board on September 12, 1978. The Board stated only that "the allegations of the Petitioner are insufficient to warrant reversal of said action."

A second petition for decertification was filed by the Committee on August 23, 1979. Again citing the Board's cease and desist order, by then enforced by the Fourth Circuit, Mr. Humphrey summarily dismissed this petition, stating that the "employer has not yet fully complied with all the provisions of the Board's Order." Again, however, the notice of dismissal failed to specify in what way the Shipyard had failed to comply with this Order.

On October 3, 1979, the Designers Committee filed a third decertification petition, which is the subject matter of the present suit. The Committee also filed an unfair labor practice charge against the Shipyard, alleging that continued bargaining by the Shipyard with the Union constituted unlawful assistance in violation of section 8(a)(2) of the Act, 29 U.S.C. § 158(a)(2).[2] In response to the Committee's decertification petition, Mr. Humphrey issued a Notice of Representation Hearing on October 12, 1979, stating that it appeared "that a question affecting commerce has arisen concerning the representation of employees...." A hearing, pursuant to section 9(c)(1) of the Act, *supra*, was scheduled to be held on October 19, 1979.

Before this hearing could be held, the Union filed an unfair labor practice charge. When this charge was filed, and pursuant to Board policy, the Board notified that the October 19 hearing on the decertification petition was "indefinitely postponed pending resolution of the unfair labor practice charge" filed by the Union. Prior to the resolution of this unfair labor practice

charge, Mr. Humphrey dismissed the Committee's October 3 decertification petition without holding any hearing. Parenthetically noting that the Union's unfair labor practice charges had been dismissed or withdrawn,[3] the notice of dismissal reviewed the actions taken on the earlier decertification petitions and the short history of negotiations between the Shipyard and Union *following* the Fourth Circuit's July 25, 1979, decision. The Regional Director ignored the considerable number of negotiation sessions which took place between the time the employer dropped its relabeling proposal and the Fourth Circuit's opinion. The Regional Director then concluded: "In view of these circumstances, it does not appear that, pursuant to Board Order [the order concerning the Shipyard's proposed change in the title of the unit's employees], as enforced by the Court judgment, the Employer and the Union have had reasonable time to engage in collective bargaining. Accordingly, no question of representation currently exists and I am, therefore, dismissing the petition in this case." The Regional Director made no explanation of his apparent retraction of his earlier finding, in the notice of the October 19 hearing, that a question affecting commerce had arisen concerning the representation of employees. The Board affirmed this action by telegram on January 24, 1980, again stating only that the allegations in the petition "are insufficient to warrant reversal of said action."

Thereafter, the plaintiffs brought the present action, alleging that the Regional Director and the Board acted arbitrarily and capriciously in dismissing the October 3 decertification petition, that this conduct was in violation of the mandate of section 9(c)(1) of the Act, *supra*, and that this action deprived the employees of their right freely to choose their bargaining agent, and that they were deprived of due process of law. The matter comes before the Court on

2. This section provides:
   (a) It shall be an unfair labor practice for an employer—

   . . . . .

   (2) to dominate or interfere with the formation or administration of any labor organiza-

tion or contribute financial or other support to it....

3. They were, in fact, dismissed by the Regional Director on November 14, 1979, because there was "insufficient evidence of a violation."

the defendants' motion to dismiss and on the plaintiffs' motion for summary judgment.

In their motion to dismiss, the defendants argue that this Court lacks jurisdiction to review the Board's dismissal of this decertification petition. This argument is based on the strictly limited judicial review available for Board certification actions under section 9 of the Act, 29 U.S.C. § 159.

█ Generally, a Board order in certification proceedings under § 9 of the Act is not considered a "final order" and therefore is not subject to judicial review except as it may relate to questions raised by a petition for enforcement or review of an order restraining an unfair labor practice. *American Federation of Labor v. N.L.R.B.*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940). Even this limited, indirect review of certification orders may be had only on appeal to the courts of appeal, not in an original action commenced in the district court. 29 U.S.C. § 160(e) and (f). This is consistent with Congress' intent to leave certification judgments to the sound discretion of the Board. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 479, 84 S.Ct. 894, 897, 11 L.Ed.2d 849 (1964); *American Federation of Labor v. N.L.R.B., supra.*

However, the Supreme Court has recognized certain "extraordinary circumstances" which permit district court review of orders entered in certification proceedings. *Boire v. Greyhound Corp., supra*, 376 U.S. at 479–80, 84 S.Ct. at 897–98. A district court may review such Board determinations (1) where the suit is to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act, *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Associated Builders & Contractors Inc. v. Irving*, No. 78–1268 (4th Cir. December 18, 1979); and (2) where "the presence of public questions particularly high in the scale of our national interest because of their international complexion is uniquely compelling justification for a prompt judicial resolution of the controversy over the Board's power." *McCulloch v. Sociedad Nacional*, 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547 (1963). While the latter exception is not applicable in this case, we believe that the former exception is.

█ In considering the defendants' motions to dismiss, we must, of course, look only to the plaintiffs' Complaint, taking the allegations therein as true and giving them a liberal interpretation under the law. *See, e. g., Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Viewed in this manner, we believe that the allegations in the plaintiffs' Complaint fall well within the exception articulated in *Leedom v. Kyne, supra.* The plaintiffs allege that the Board's action was arbitrary and capricious, and that it was contrary to the mandates of § 9 of the Act. For the reasons stated below, we conclude that the facts alleged by the plaintiffs in their Complaints raise a substantial question whether the actions of the Board were in excess of its authority and contrary to statutory mandate. We need not, therefore, go beyond the language of the *Leedom* exception to find that this Court has jurisdiction to consider the matters raised in the plaintiffs' Complaints:

> This suit is not one to "review," in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act.

358 U.S. at 188, 79 S.Ct. at 184. Accordingly, the plaintiffs having alleged arbitrary and capricious acts on the part of the Board, which acts would be in excess of or contrary to the provisions of the Act, the defendants' motions to dismiss are DENIED. *See Surratt v. N.L.R.B.*, 463 F.2d 378 (5th Cir. 1972); *Templeton v. Dixie Color Printing Co.*, 444 F.2d 1064 (5th Cir. 1971).

The plaintiffs' motion for summary judgment is supported by various affidavits and

other documents essentially substantiating the facts as outlined above. Because the defendants have not submitted contradictory affidavits or documents, or otherwise materially disputed these facts, we must accept this summary as true for the purposes of this motion. *Cf. First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 279, 88 S.Ct. 1575, 1587, 20 L.Ed.2d 569 (1968); *Bland v. Norfolk & Southern R.R.*, 406 F.2d 863 (4th Cir. 1969).

■ The Board's duties under section 9(c)(1) of the Act are clear:

Whenever a petition shall have been filed, *in accordance with such regulations as may be prescribed by the Board* . . . the Board *shall* investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice.

Thus, the Board had an imperative duty to investigate the facts underlying the decertification petition, and to hold a hearing if it had reasonable cause to believe that a question of representation existed. The importance of this duty is clear when it is recognized that it is in this way that the Board protects the employees' right, recognized under section 7 of the Act, 29 U.S.C. § 157, "to self–organize, to form, join or assist labor organizations, to bargain collectively through representatives *of their own choosing* . . . ."

■ We hold that the Board failed to execute its statutory duty in any meaningful way and that this Court has the power to remedy this failure by the Board to exercise its statutory responsibility to prevent further injury to the employees in the design unit. *Templeton v. Dixie Color Printing Co., supra*, 444 F.2d at 1068. In dismissing the October 3 decertification petition, the Regional Director based his decision on a finding that the Union and the Shipyard had not had a reasonable time in which to engage in bargaining. However, his November 7, 1979, notice of dismissal reveals that in assessing the reasonableness of the period of negotiation, the Regional Director considered only those bargaining sessions

held after the Fourth Circuit issued its July 25, 1979, enforcement decision. There is no indication that he considered the long course of negotiations which took place between November 1977, when the Shipyard dropped its proposal to change the description of the unit, and the time the Fourth Circuit entered its decision. Nor is there any suggestion in this notice that the Regional Director reviewed this course of negotiations, but rejected it in making his determination. The record is simply silent as to the Director's knowledge of these bargaining sessions or his assessment of them. The Court can only conclude that he failed to investigate these sessions and, therefore, that his decision to dismiss was made without any meaningful investigation. If, in fact, these sessions were considered, the employees were entitled to some reasonable explanation as to why these sessions could not be included in determining whether collective bargaining had taken place over a reasonable period of time. Absent any such explanation, the Director's conduct appears nothing less than arbitrary. Moreover, the Regional Director's dismissal of the petition constituted a direct reversal of his previous finding, embodied in the October 12 Notice of Representation Hearing, that, in the language of § 9(c), a question affecting commerce had arisen concerning the representation of employees. Having made this finding, § 9(c) required that a hearing be held. However, without holding any such hearing, and without any attempt to explain his inconsistent action, the Director apparently reversed his finding and dismissed the petition. Confidence in the meaningfulness of the Director's investigation is substantially undermined by this seemingly arbitrary and capricious action.

■ The defendants urge that the Board corrected any oversight or error by the Regional Director when it reviewed his decision. Because the plaintiffs raised this issue in its petition for review, the defendants argue, the Board considered and rejected the matters now raised by the plaintiffs. However, the Board's terse telegraphic affirmance provides no support for

this conclusion.[4] While a second telegram,[5] apparently intended to clarify the first telegram, states that the Board had duly considered the employer's and petitioner's requests for review of the Regional Director's dismissal of the instant petition," there is no indication as to the reasons for their judgment, nor that they made any independent review of the facts to determine whether a reasonable time for negotiations had in fact elapsed.

Accordingly, we hold that the conduct of the Regional Director and the Board simply did not constitute a meaningful investigation as mandated by § 9(c) of the Act and, therefore, that the Board arbitrarily failed to exercise its statutory responsibility. This failure resulted in injury to the employees in the unit by depriving them of the opportunity to organize and bargain collectively through the representative of their choice, a right clearly guaranteed under § 7 of the Act.

For these reasons, we GRANT the plaintiffs' motion for summary judgment and DIRECT the Board to reinstate the October 3 decertification petition. Pursuant to § 9(c)(1) of the Act, the Board shall conduct an investigation to determine whether there is reasonable cause to believe that a question of representation affecting commerce exists. If it determines that such reasonable cause exists, the Board shall take such further action as required by § 9(c) of the Act. Under this Order, the Board is free to consider all matters which it may deem relevant to determining whether such reasonable cause exists. However, the Board is specifically ORDERED to review the negotiations between the Shipyard and the Union regarding the design unit beginning in November 1977 and continuing until they were suspended by the parties on October 11, 1979. The Board shall determine, in light of the parties' conduct during this course of negotiations, the matters discussed and proposals made, and the other circumstances surrounding them, whether as of October 3, 1979, negotiations between the Shipyard and the Union had taken place over a reasonable period of time. If the Board should find that a reasonable opportunity to negotiate had not existed, it shall state its reasons for this finding in writing. If it finds that a reasonable opportunity for negotiations had existed, the Board is DIRECTED to take such further action as it may deem proper, not inconsistent with this Order or other applicable law.

---

4. This telegram read:
  Re Newport News Shipbuilding AndDry Dock 5 RD 674
  Employers and petitioners requests for review of Regional Directors dismissal of the instant petition is hereby affirmed as the allegations therein are insufficient to warrant reversal of said action. By direction of the Board: Dated Jan 24, 1980

5. This second telegram read:
  Re Newport News Shipbuilding and Dry Dock 5 RD 674
  Telegraphic order of Jan. 24, 1980 is hereby calrified [sic] as follows: Having duly considered the employers and petitioners requests for review of the Regional Directors dismissal of the instant petition, the Board concluded that the allegations therein are insufficient to warrant reversal of said action. Accordingly, dismissal of the petition is hereby affirmed.
  Robert Volger Act Exec Secy NLRB WSHDC