633 F.2d 1079
 105 L.R.R.M. (BNA) 2738, 89 Lab.Cas. P 12,312
 NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Appellee,
and
The Designers Committee to Decertify, Appellee,
v.
NATIONAL LABOR RELATIONS BOARD; John H. Fanning; Howard
Jenkins, Jr.; John A. Penello; John C. Truesdale, in their
capacity as members of the National Labor Relations Board;
William C. Humphrey, as Regional Director, Region 5,
National Labor Relations Board, Appellants,
and
United Steelworkers of America, AFL-CIO, Intervening Defendant.
NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Appellee,
and
The Designers Committee to Decertify, Appellee,
v.
The NATIONAL LABOR RELATIONS BOARD; John H. Fanning; Howard
Jenkins, Jr.; John A. Penello; John C. Truesdale, in their
capacity as members of the National Labor Relations Board,
and William C. Humphrey as Regional Director, Region 5,
National Labor Relations Board, Defendants,
and
United Steelworkers of America, AFL-CIO, Appellants.
 Nos. 80-1342, 80-1347.
 United States Court of Appeals,
Fourth Circuit.
 Argued Aug. 12, 1980.
Decided Oct. 9, 1980.
 
 Peter Winkler, N. L. R. B., Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Aileen A. Armstrong, Asst. Gen. Counsel, Washington, D. C., for Special Litigation on brief), for appellants.
 Richard J. Brean, Pittsburgh, Pa. (Carl B. Frankel, Pittsburgh, Pa., C. T. Neale, III, Hudgins & Neale, Newport News, Va., Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C., Bernard Kleiman, Chicago, Ill., on brief), for United Steelworkers of America, AFL-CIO-CLC.
 Andrew M. Kramer, Washington, D. C. (Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., on brief), for appellees.
 Before FIELD, Senior Circuit Judge, and HALL and SPROUSE, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 The National Labor Relations Board (Board), and the United Steelworkers of America (Union), appeal the district court's summary judgment in favor of appellees Newport News Shipbuilding and Dry Dock Company (Company) and The Designers Committee to Decertify (Committee). The court ordered the Board to reinstate and further investigate the Committee's decertification petition. Since we conclude that the district court lacked subject matter jurisdiction, the district court's judgment is reversed.
 
 
 2
 The Union was certified in 1977 to represent a large number of the Company's employees, including those in the design unit. The action below involved only the employees in that unit. The Committee, representing the designers, had filed three separate petitions asking that the Union be decertified as bargaining representative for their unit. All three petitions were dismissed by the Regional Director, but it is only the third petition that is the subject of this appeal. The Regional Director dismissed it on November 7, 1979, indicating that bargaining had commenced on September 10 and 11, 1979, and that although progress had been made, the parties had not had reasonable time to engage in collective bargaining. The Board affirmed the petition's dismissal. The Company applied to the district court for an order compelling the Board to reinstate the petition and to conduct an investigation to determine if there were sufficient grounds for a representation hearing. The district court granted the requested relief by summary judgment.
 
 
 3
 Although the Union was certified in May, 1977, the parties have yet to agree on a representation contract. In 1977, the Union filed an unfair labor practice charge alleging unlawful bargaining tactics by the Company. After the normal course of litigation and appeal, the Board found a Company violation and its order was enforced by this court. Newport News Shipbuilding and Dry Dock Co. v. NLRB, 602 F.2d 73 (4th Cir. 1979).
 
 
 4
 The parties continued to bargain during the litigation, holding forty-two bargaining sessions ending in July, 1978. After this court's enforcement order, there were seven additional bargaining sessions, beginning on September 10, 1979. The crux of the Company's contentions is that the Board did not investigate the forty-two pre-enforcement order bargaining sessions in determining whether the parties had a reasonable time in which to bargain. The Company also argues that the Board's investigation of the third petition did not consider the section 7 majority rights of the design unit employees and that the Board was required to conduct a hearing.
 
 
 5
 Section 9(c)(1) of the National Labor Relations Act states:
 
 
 6
 Whenever a petition shall have been filed ...
 
 
 7
 ....
 
 
 8
 the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice.
 
 
 9
 29 U.S.C. § 159(c)(1). The general rule, of course, is that courts do not directly review Board representation proceedings. AFL v. NLRB, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940). Section 9(c) hearings and investigations are particularly within the Board's discretion; the nature and scope of those proceedings were intentionally not specified in the Act but were to be developed in light of the Board's experience and expertise. See, e. g., Lawrence Typographical Union v. McCulloch, 349 F.2d 704 (D.C.Cir.1965) (section 9(c)(1) hearing); Schimmel v. Sperry, 48 Lab.Cas. P 18,494 (W.D.Mo.1963) (section 9(c)(1) investigation); Marcie v. Madden, 37 Lab.Cas. P 65,557 (N.D.Ill.1959) (investigation). As has been said by the D.C. Circuit:
 
 
 10
 If representation hearings could be reviewed in the District Court to determine whether they were "appropriate," most representation proceedings could be reviewed. This would violate the express intention of Congress to restrict review so as to prevent dilatory tactics and delay in certification.
 
 
 11
 Lawrence, supra, at 707.
 
 
 12
 The Supreme Court, in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), indicated there are few exceptions to the initial exclusiveness of the Board's determination in representation proceedings. Kyne involved an arbitrary action by the Board in certifying professional and nonprofessional employees as one bargaining unit without an election among the professional employees. The Supreme Court, although permitting judicial review of Board proceedings in that case, severely limited the application of its holding. The party claiming jurisdiction must show that there has been "an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." Id. at 188, 79 S.Ct. at 184. Kyne is to be narrowly construed and should not be used to review alleged Board errors of fact. Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). Jurisdiction is appropriate only when there is a "strong and clear" demonstration that a "clear, specific and mandatory provision of the Act" has been violated. McCulloch v. Libbey-Owens-Ford Glass Co., 403 F.2d 916, 917 (D.C.Cir.1968), cert. denied, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969).
 
 
 13
 The appellees contend that the Board's actions in this case are arbitrary and reviewable under the Kyne exception. They cite Templeton v. Dixie Color Printing Co., 444 F.2d 1064 (5th Cir. 1971), and Surratt v. NLRB, 463 F.2d 378, 381 n. 1 (5th Cir. 1972), to support their position. Templeton and Surratt both involved the automatic dismissal of decertification petitions because the union had filed "blocking charges."[1] In Surratt the charges were found to be without merit, while in Templeton the charges had been pending for almost four years at the time the decertification petition was dismissed by the Regional Director. The Fifth Circuit Court characterized the petition dismissals and refusal to review in those cases as arbitrary. It held that the effect of the Board's actions frustrated the purposes of the Act and was counter to the congressional mandate that the Board conduct an investigation upon the filing of a decertification petition. In Bishop v. NLRB, 502 F.2d 1024 (5th Cir. 1974), however, the Fifth Circuit considered a similar case and pointed out the narrow confines of its Templeton and Surratt decisions. It noted those cases "had carved out a precarious exception to the general rule of review," and both had carefully and explicitly restricted the holdings to their peculiar facts. Id. at 1031.
 
 
 14
 The appellees contend that the limited scope of the NLRB investigation in the instant case brings it within the "precarious exception" to the general rule declining judicial intervention in representation proceedings. The district court, in issuing the order, said:
 
 
 15
 We hold that the conduct of the Regional Director and the Board simply did not constitute a meaningful investigation as mandated by § 9(c) of the Act and, therefore, that the Board arbitrarily failed to exercise its statutory responsibility.
 
 
 16
 The trial court supported its finding primarily on the Board's failure to analyze the forty-two pre-enforcement order bargaining sessions. The Regional Director's November 7, 1979, letter dismissing the petition, however, indicates he had conducted an investigation. He had explored the two prior decertification petitions, the earlier proceedings before the Board and in the courts, and recent progress in negotiations between the parties. The appellees and the district court, in attacking the scope of the investigation, implicitly admit its existence. The Regional Director apparently decided that this court's 1979 decision enforcing the Board's earlier order placed the bargaining sessions under a new light. He consequently decided to consider the time and progress of the 1979 bargaining sessions but not to consider the sessions occurring prior to the enforcement order.
 
 
 17
 We do not judge the accuracy of the Board's selective investigative technique. It has the authority to determine the scope of an investigation necessary to act on a decertification petition. If the NLRB completely abrogates its responsibility, as in Kyne, Surratt, and Templeton, we will compel it to act. Neither the district court nor this court, however, has the subject matter jurisdiction to quantitatively gauge the Board's representation investigation.
 
 
 18
 Similarly, the guidance furnished by section 9(c)(1) prohibits us from ordering the Board to conduct a hearing in this case. A hearing must be provided only after the Board has reasonable cause to believe that a question of representation exists. Since the Board has met its statutory obligation by conducting an investigation, a judicial body cannot interfere with its evaluation of the investigation short of the Board's arbitrary action. The decision to dismiss the petition was based on the factors listed in its letter of November 7, 1979. The decision, whether right or wrong, was not arbitrary.
 
 
 19
 The appellees argue, finally, that dismissal of the Committee's third decertification petition violates the employees' section 7 statutory right to freely choose their own bargaining representatives. By refusing to allow a decertification election, it is alleged, the Board will "force an unwanted action on an unwilling majority." The section 7 rights granted by Congress are certainly vital. It is, however, a specific congressional mandate which the Board is required to observe in conducting a 9(c)(1) representation investigation and hearing. To hold otherwise would be to require judicial oversight of every certification and decertification petition alleging majority status. The Act's general goals of free choice and majority rule do not contain a grant of federal jurisdiction; nor does the arguable contravention of those goals permit jurisdiction under Kyne. See Physicians National House Staff Association v. Murphy, 443 F.Supp. 806, 810 (D.D.C.1978), aff'd, --- F.2d ---- (D.C.Cir.1980).
 
 
 20
 As we indicated in our post-argument order the district court did not have subject matter jurisdiction to define the required scope of the Board's investigation nor to require the Committee's petition to be reinstated. Accordingly, the case is remanded to the district court with directions to dismiss.
 
 
 21
 REVERSED AND REMANDED.
 
 
 
 [1]
 A "blocking charge" is the filing of an unfair labor practice charge by a Union while a decertification petition is pending. The bona fide filing of an unfair labor practice charge normally is the basis for dismissal of a decertification petition pending the resolution of the unfair labor practice charge