NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

WINN–DIXIE STORES, INC., Respondent.

No. 26735.

United States Court of Appeals Fifth Circuit.

June 17, 1969.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Julius Rosenbaum, Glen M. Bendixsen, Attys., N.L.R.B., Washington, D. C., Harold A. Boire, Director, Region 12, N.L.R.B., Tampa, Fla., for petitioner.

O. R. T. Bowden, David A. Bartholf, Hamilton & Bowden, Jacksonville, Fla., for respondent.

Before TUTTLE and GEWIN, Circuit Judges, and COMISKEY, District Judge.

PER CURIAM:

There can be no serious question as to the affirmance of the decision of the National Labor Relations Board that the respondent interfered with, restrained, and coerced its employees in violation of Section 8(a) (1) of the National Labor Regulations Act, as amended.

The respondent strongly attacks the order of the Board holding it also violated Section 8(a) (5) and (1) refusing to bargain collectively with the union, because, it says, having lost an election by an even split of the vote, the Board cannot rely for its finding of a majority representation status of the employees by reference to authorization cards that were signed by 16 of the 23 employees.

We do not have here, as we did in the case of NLRB v. Peterson Bros. [5 Cir., 1965, 342 F.2d 221] an ambiguous card.[1] The card here signed by the employees is in the following language:

AUTHORIZATION FOR REPRESENTATION UNDER THE NATIONAL LABOR RELATIONS ACT

I hereby authorize the AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL-CIO, to represent me and bargain collectively with my employer in my behalf and to negotiate and conclude all agreements concerning wages, hours, and all other conditions of employment.

I hereby revoke and rescind any power and authority heretofore executed by me, and declare that this authorization supersedes any other which I may previously have given to any person or organization to represent me for the purposes above set forth. This authorization shall remain in full force and effect for one year from date hereof.

The company's principal contention here is that wherever authorization cards are signed, it is permissible, on the hearing of a charge of failing to recognize the union based upon a card count, to receive evidence from each of the signers showing what his subjective intent was when the card was signed. In this respect the respondent relies heavily on this court's decision in NLRB v. Peterson Bros., *supra*. This court did not make such a holding in that case. As pointed out above, in Peterson Brothers, the card was ambiguous on its face. Moreover there was evidence that in ob-

1. In Peterson Brothers, the following printed legend was at the bottom of the card: "This is not an application for membership. This card is for use in support of the demand of the union for recognition from the company in your behalf *or for an N.L.R.B. election.*" (Emphasis added).

taining some of the cards it was represented to the signers that they were being obtained for the purpose of holding an election. Here the examiner credited the testimony of Stevens and Cohn, the persons who obtained the challenged cards and this was made a finding by the Board. If we accept these credibility findings, then there is no basis for inquiring into the subjective intent of the signers on the theory that the cards were obtained which said one thing but which were explained to the signers as meaning something else; as occurred in Peterson. In such a situation it is appropriate to ascertain the intent of the signer. Here, to be sure, the respondent claims that Cohn's testimony should not be accepted, because several of the signers were brought into the management's presence three weeks before trial and signed *sworn* statements at variance with their testimony before the examiner.[2]

We also note that in the more recent case of N.L.R.B. v. Southland Paint Co., (5 Cir., 1968) 394 F.2d 717, the court said: "There is *undisputed* evidence that the solicitors told at least as many as a dozen employees that *a purpose* of the cards was to obtain an election. At least eight and perhaps more employees were permitted to sign under the impression that the cards were to be used to obtain an election." 394 F.2d 717, 730–731. (Emphasis added.)

Here the Board has rejected any such evidence by crediting the testimony of Stevens and Cohn that it was explained that at least one of the purposes of the cards was to obtain recognition by a card count *without any election*. In these circumstances, we find that the action of

2. This word "sworn" is bandied about repeatedly during the testimony before the examiner and in the briefs here. We seriously question the propriety of subjecting a person to "an oath" in such proceedings as being something of a threat to his later recalling facts in a different manner, whereupon counsel can subject him to the sharp inquiry as to whether he had not "sworn" to something different a short time previously.

the examiner in not permitting the witnesses to be questioned more fully as to their subjective intent at the time of signing the card a long time previous to the hearing was not error. They were permitted to testify freely as to what representations were made to them when they signed.

We have carefully considered respondent's objection to the breadth of the order and find that it lacks merit.

The order of the Board will be enforced.

We do not understand that giving of an oath gives any particular sanction to what a person says or signs unless it be in matters in which the Florida statute "requires" or "authorizes" that an oath be taken. See Fla.Stat.1969, chapter 837. Is not the only sworn testimony here, in true legal effect, that given before the examiner on the hearing held in this case?