502 F.2d 1024
 87 L.R.R.M. (BNA) 2524, 75 Lab.Cas. P 10,403
 Michael BISHOP et al., etc., Plaintiffs-Appellees,
v.
The NATIONAL LABOR RELATIONS BOARD, Defendant, Allied Food
Workers District Union 433, Amalgamated Meat
Cutters & Butcher Workmen of North
America, AFL-CIO, Movant-Appellant.
 No. 73-3169.
 United States Court of Appeals, Fifth Circuit.
 Oct. 16, 1974.
 
 Albert Gore, Judith A. Lonnquist, Linda R. Hirshman, Chicago, Ill., for movant-appellant.
 Robert C. Gobelman, Stephen E. Day, Jacksonville, Fla., for plaintiffs-appellees.
 Elliott Moore, Deputy Assoc. Gen. Counsel, N.L.R.B., Glen M. Bendixsen, Chief of Sp. Litigation, Washington, D.C. Jonathan Axelrod, Reg. Atty., Region 12, Joseph V. Moran, N.L.R.B., Tampa, Fla., for other interested parties.
 Before GOLDBERG and MORGAN, Circuit Judges, and CASSIBRY, District judge.
 GOLDBERG, Circuit Judge:
 
 
 1
 The parties in this case came to court prepared to argue the mysteries of permissive intervention and intervention of right as set in Rule 24 of the Federal Rules of Civil Procedure. During oral argument, however, it developed that the parties were not in a state of certitude as to whether the district court had jurisdiction of the case in which appellants were attempting to intervene. After reading the supplemental briefs submitted by the parties at our request and considering the matter further, we are convinced that the district court had no jurisdiction over the subject matter of the action in which the Rule 24 question arose.
 
 
 2
 On May 5, 1966, the National Labor Relations Board (NLRB or the Board) certified Allied Food Workers District Union 433, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO (the Union) as the exclusive bargaining agent for a specified group of employees at the Jacksonville, Florida, warehouse of Winn-Dixie Stores, Inc. The Union was recertified as bargaining representative on July 31, 1969, after winning a decertification election.
 
 
 3
 On November 21, 1969, the Union filed charges with the Regional Office of the NLRB, alleging that Winn-Dixie had committed a number of unfair labor practices, including refusal to bargain with the Union in good faith.[1] When the Regional Director dismissed some of the charges and retained the remaining charges pending further action, the Union filed an appeal that the Board's General Counsel sustained in part and denied in part on June 1, 1972. The Regional Director then proposed that Winn-Dixie and the Union agree to an informal settlement of the unfair labor practice charges but the parties could not reach an agreement in the matter. As the Board's investigation was progressing, Winn-Dixie allegedly committed other unfair labor practices and these new charges were investigated in their turn.
 
 
 4
 While the unfair labor practice proceedings were glaciating their course through the NLRB machinery, Robert E. Schell, a Winn-Dixie employee, filed a petition with the NLRB on April 7, 1972, to decertify the Union. The Regional Director deferred processing the petition until the General Counsel acted upon the Union's appeal on the unfair labor practices charges. He then dismissed Schell's petition on September 20, 1972, on the ground that the General Counsel had determined that the Union's charges had merit, and that this determination blocked any election until the resolution of the charges. The very next day, seven Winn-Dixie employees (plaintiffs) filed suit in federal district court to compel the NLRB to process the decertification petition; at about the same time, plaintiffs appealed the Regional Director's action to the Board.
 
 
 5
 On January 31, 1973, the Union moved to intervene in plaintiffs' action against the Board and in March, 1973, the Union itself sued the Board in federal district court to compel the NLRB to issue an unfair labor practices complaint against Winn-Dixie. On May 9, 1973, the district court denied the Union's motion to intervene in plaintiffs' action, from which order the Union now appeals.
 
 
 6
 When the General Counsel finally issued an unfair labor practice complaint against Winn-Dixie on October 30, 1973, charging it with a wide range of misconduct, including refusal to bargain, the Union's action against the NLRB was dismissed as moot. On January 18, 1974, the NLRB sustained the dismissal by the Regional Director of the decertification petition. In February, 1974, the Board moved to dismiss plaintiffs' action for lack of jurisdiction or, in the alternative, for summary judgment; the district court denied these motions.
 
 
 7
 In summary, this labor dispute is almost five years old. As things now stand, the plaintiffs are in district court trying to compel the NLRB to process their decertification petition. The Union is attempting to intervene in plaintiffs' lawsuit and is very interested in the fate of its unfair labor practices charges against Winn-Dixie. The Board's General Counsel is proceeding through Board channels on his unfair labor practices complaint, while the NLRB is defending its dismissal of the decertification petition in district court. If the apothegm that justice delayed is justice denied is applicable to labor disputes, then this bout of administrative and judicial sparring cannot have a very salutary conclusion-- the referee and judges coming to no decision after many rounds.
 
 I.
 
 8
 Plaintiffs allege that federal jurisdiction over the subject matter of this complaint is furnished by 28 U.S.C. 1337, as applied to labor disputes by the United States Supreme Court in Leedom v. Kyne, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, and by this Court in Templeton v. Dixie Color Printing Co., 5 Cir. 1971, 444 F.2d 1064, and Surratt v. N.L.R.B., 5 Cir. 1972, 463 F.2d 378.[2] We believe that the carefully circumscribed jurisdiction asserted in those cases is very far from reaching this case and that the district court should have dismissed plaintiffs' action for lack of jurisdiction over the subject matter.
 
 
 9
 Generally, NLRB decisions in representation cases are not directly reviewable by the federal courts. Congress has provided in section 10(f)[3] of the National Labor Relations Act (the Act)[4] that only a 'final order' of the Board is subject to review by a court of appeals, and the United States Supreme Court has determined that a Board order in a certification proceeding is not such an order. American Federation of Labor v. N.L.R.B., 1940, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347. Consequently, orders concerning representation matters are reviewable only as they are drawn into question by a petition for enforcement or review of a Board order made under section 10(c) of the Act to restrain an unfair labor practice. 29 U.S.C. 159(e) and (f); Magnesium Casting Co. v. N.L.R.B., 1971, 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed.2d 735; Boire v. Greyhound Corp., 1964, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849.[5]
 
 
 10
 Nowhere in the statutory scheme does Congress mention district court review of NLRB orders in representation cases, and there is a reason for that profound silence. The underlying purpose of the Act is to maintain industrial peace, Brooks v. N.L.R.B., 1954, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125, and to allow employers and unions to rush into federal district court at will to prevent or nullify certification elections would encourage dilatory tactics by dissatisfied parties and lead to industrial unrest. See H.R.Rep.No.245, 80th Cong., 1st Sess. 43; H.R.Rep.No.510, 80th Cong., 1st Sess. 56-57. Such a rule would not only cause the federal courts to set the dockets of the NLRB, but time-consuming review in such cases would strike a blow at the foundations of our finely-tuned system of collective bargaining. For these reasons, Congress has determined that the NLRB, and not the courts, is to be the umpire in representation disputes. National Ass'n of Women's & Children's Apparel Salesmen, Inc. v. F.T.C., 5 Cir. 1973, 479 F.2d 139. See H.R.Rep.No.972, 74th Cong., 1st Sess. 5-6; S.Rep.No.573, 74th Cong., 1st Sess. 5-6; Leedom v. Kyne, supra, 358 U.S. at 191-194, 79 S.Ct. at 79-80, 3 L.Ed.2d at 216-218 (Brennan, J., dissenting).
 
 
 11
 It is not surprising, therefore, that federal courts have assumed jurisdiction in representation matters in only three highly-circumscribed situations. One exceptional set of circumstances is presented where the lawsuit presents 'public questions particularly high in the scale of our national interest because of their international complexion.' McCulloch v. Sociedad Nacional de Marineros de Honduras, 1963, 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547, 552. Some courts have found another exception to the rule in rate cases where the NLRB has violated the constitutional rights of the complaining party. Milk & Ice Cream Drivers' Union, Local 98 v. McCulloch, 1962, 113 U.S.App.D.C. 156, 306 F.2d 763; Fay v. Douds, 2 Cir. 1949, 172 F.2d 720. The third exception is that of Leedom v. Kyne, 1958,358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, where the United States Supreme Court set aside a Board election and certification where the NLRB had clearly acted 'in excess of its delegated powers and contrary to a specific prohibition in the Act.' 358 U.S. at 188, 79 S.Ct. at 184, 3 L.Ed.2d at 214. This last exception has generally been limited to the very narrow situation where there is a 'plain' violation of an unambiguous and mandatory provision of the statute, Boire v. Miami Herald Publishing Co., 5 Cir. 1965,343 F.2d 17. See generally Groendyke Transport, Inc. v. Davis, 5 Cir. 1969,406 F.2d 1158. It is this last exception that plaintiffs have relied upon in the instant case.
 
 II.
 
 12
 Plaintiffs claim that the Board's administrative dismissal of their decertification petition pursuant to its 'blocking charge' rule violated section 9(c)(1) of the Act, which provides in pertinent part that:
 
 
 13
 Whenever a petition shall have been filed . . . by an employee or group of employees . . . alleging that a substantial number of employees . . . assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in (the Act) . . . the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice . . .. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.[6]
 
 
 14
 Plaintiffs charge that the NLRB's action on their decertification petition was arbitrary and an abuse of its discretion, that the Board refused to carry out its statutory duties as outlined in section 9(c)(1), and that this refusal has deprived plaintiffs of their statutory right to representation of their own choosing as defined in section 7 of the Act.[7]
 
 
 15
 The NLRB has employed its 'blocking charge' rule since 1937, U.S. Coal & Coke, 3 N.L.R.B. 398, to dismiss decertification petitions during the pendency of unfair labor practice proceedings or while the effects of prior unfair labor practices remain undissipated.[8] The reasons for this rule do not long elude comprehension. As this Court explained very recently in N.L.R.B. v. Big Three Industries, Inc., 5 Cir. 1974, 497 F.2d 43, 51-52:
 
 
 16
 It would be particularly anomalous, and disruptive of industrial peace, to allow the employer's (unfair labor practices) to dissipate the union's strength, and then to require a new election which 'would not be likely to demonstrate the employees' true, undistorted desires,' N.L.R.B. v. Gissel Packing Co., 1969, 395 U.S. 575, 611-612, n. 33, 89 S.Ct. 1918, 1938, 23 L.Ed.2d 547, 576, since employee disaffection with the union in such cases is in all likelihood prompted by (the situation resulting from the unfair labor practices).
 
 
 17
 If the employer has in fact committed unfair labor practices and has thereby succeeded in undermining union sentiment, it would surely controvert the spirit of the Act to allow the employer to profit by his own wrongdoing. In the absence of the 'blocking charge' rule, many of the NLRB's sanctions against employers who are guilty of misconduct would lose all meaning. Nothing would be more pitiful than a bargaining order where there is no longer a union with which to bargain.
 
 
 18
 Nor is the situation necessarily different where the decertification petition is submitted by employees instead of the employer or a rival union. Where a majority of the employees in a unit genuinely desire to rid themselves of the certified union, this desire may well be the result of the employer's unfair labor practices. In such a case, the employer's conduct may have so affected employee attitudes as to make a fair election impossible. N.L.R.B. v. Kaiser Agricultural Chemicals, 5 Cir. 1973, 473 F.2d 374.
 
 
 19
 If the employees' dissatisfaction with the certified union should continue even after the union has had an opportunity to operate free from the employer's unfair labor practices, the employees may at that later date submit another decertification petition. The Supreme Court stressed in Gissel, supra, that:
 
 
 20
 There is . . . nothing permanent in a bargaining order, and if, after the effects of the employer's acts have worn off, the employees clearly desire to disavow the union, they can do so . . . (There is in such a case) no 'injustice to employees who may wish to substitute for the particular union some other . . . arrangement' (but) a bargaining relationship 'once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed,' after which 'the Board may, . . . upon a proper showing, take steps in recognition of changed situations which might make appropriate changes in bargaining relationships.' Franks Bros. v. N.L.R.B., 1944, 321 U.S. 702, 705-706, 64 S.Ct. 817, 819, 88 L.Ed.2d 1020, 1023.
 
 
 21
 For all of these reasons, this Court has long approved the 'blocking charge' rule. N.L.R.B. v. Big Three Industries, Inc., supra; N.L.R.B. v. Auto Ventshade, Inc., 5 Cir. 1960, 276 F.2d 303; N.L.R.B. v. Sanson Hosiery Mills, 5 Cir. 1952, 195 F.2d 350, cert. denied, 344 U.S. 863, 73 S.Ct. 103, 97 L.Ed. 669; N.L.R.B. v. Houston & North Texas Motor Freight Lines, 5 Cir. 1951, 193 F.2d 394.
 
 III.
 
 22
 Plaintiffs nevertheless claim that the 'blocking charge' rule as applied to them was so arbitrary and without reasonable basis as to fall within the parameters of Kyne and our own Templeton and Surratt cases. An examination of those cases fails to convince us of the merit of plaintiffs' argument.
 
 
 23
 Leedom v. Kyne, supra, was a case in which the NLRB had approved as appropriate a bargaining unit containing both professional and non-professional employees without first polling the professional employees. This action flew directly into the face of section 9(b)(1) of the Act, which forbids the Board to approve such a mixed unit 'unless a majority of (the) professional employees vote for inclusion in such a unit.' The Board candidly admitted that it had acted in excess of its powers and violated the statutory rights of the professional employees; the NLRB did not admit, however, that its action gave a federal district court jurisdiction to review its decision. The Supreme Court replied that in these circumstances the district court suit 'is not one to 'review,' in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather, it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act.' 358 U.S. at 188, 79 S.Ct. at 184, 3 L.Ed.2d at 214.
 
 
 24
 The Board's action in Kyne was extraordinary, one that fully justified the exceptional assertion of district court jurisdiction over the case. As the Supreme Court later cautioned in Boire v. Greyhound Corp., supra, however, the Kyne exception to the general rule that courts have no jurisdiction directly to review NLRB representation orders 'is a narrow one.' 376 U.S. at 481, 84 S.Ct. at 898, 11 L.ed.2d at 855. The Greyhound Court refused to extend that exception:
 
 
 25
 'to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the conditions explicitly laid in 9(d) of the Act.' 376 U.S. at 481-482, 84 S.Ct. at 899, 11 L.Ed.2d at 855.
 
 
 26
 We have already shown that Kyne is applied only to plain violations of an unambiguous and mandatory section of the statute, and such a situation is not present here. But plaintiffs urge that Templeton v. Dixie Color Printing Co., 5 Cir. 1971, 444 F.2d 1064, and Surratt v. N.L.R.B., 5 Cir. 1972, 463 F.2d 378, have so embellished Kyne as to bring the instant litigation within its charmed precincts.
 
 
 27
 In Templeton, the NLRB dismissed a decertification petition filed by a group of employees on the basis of the 'blocking charge' rule. The alleged unfair labor practices underlying the Board's disposition of the petition were four years old when the petition was filed and the Board had invoked its rule mechanically, with no determination as to whether a question of representation existed. In fact, the union involved had decided not to contest an election if one were ordered, since it had not had the support of a majority of the employees for over three years.
 
 
 28
 Faced with this sort of Board conduct, the employees went to federal district court and asked for an order compelling the NLRB to process their petition and hold an election. The district court granted the requested relief. This Court then determined that the Board's action had been utterly arbitrary and had violated the employees' section 7 rights to representation of their own choosing, so that the district court had jurisdiction of the case under 28 U.S.C. 1337 and Kyne.[9] We found that the district court had properly ordered the NLRB to process the decertification petition, but we refused to compel the Board to hold an election, because Congress has reposed exclusive responsibility for such a decision in the Board.
 
 
 29
 Our opinion in Templeton cautioned time and again that this was a most unusual case: 'our decision is based on the particular circumstances presented here . . .. We hold only that, in the instant case, the Board's refusal to act is an abuse of discretion and is arbitrary.' 444 F.2d at 1070. Templeton was a case in which the unfair labor practices were so ancient that even if they had once affected employee attitudes toward the union, those effects were long since dissipated. The Board nevertheless invoked its rule and summarily dismissed the petition with no thought as to whether the rule made any sense as applied to the particular facts. In such circumstances, the long-disgruntled employees had nowhere else to go but federal district court to vindicate their statutory rights. This Court, although painfully aware of the near unanimity of authority against district court intervention in NLRB representation decisions, decided that this was the extremely rare case in which application of the 'blocking charge' rule exceeded the bounds of the Act. Far from extending the rule of Kyne, we noted that Templeton was 'arguably more 'exceptional" than the Supreme Court's case. 444 F.2d at 1069.
 
 
 30
 Strangely enough, shortly after we had carved out a precarious exception to the general rule of review in Templeton and had come close to limiting that case to its facts, we were faced with another instance of Board misconduct in Surratt. In that case, this Court affirmed a district court order requiring the Board to investigate a decertification petition that had been submitted by a group of employees, where the unfair labor practice charges blocking the petition had been found totally without merit by the trial examiner after a full administrative hearing. Such unjustifiable application of the 'blocking charge' rule by the NLRB was just the sort of unexampled abuse of discretion that Templeton had proscribed.
 
 
 31
 In Surratt, as in Templeton, the Court carefully limited the ambit of district court jurisdiction to the very unusual situation where the Board applies the 'blocking charge' rule as a per se rule without making a determination in each case 'whether the violation alleged is such that consideration of the election petition ought to be delayed or dismissed.' 463 F.2d 381. Only where the NLRB acts with the high degree of arbitrariness exhibited in Templeton and Surratt can the Board be said to have acted in violation of the Act, and thus to fall within the prohibition of Kyne. Kyne, Templeton and Surratt together stand for nothing more than the unremarkable proposition that Board orders in representation cases are not directly reviewable in the courts unless the Board's actions exceed the scope of its statutory authority. In such a case, the courts are no longer inhibited by the provisions of the Act and may review the NLRB actions to the extent that they are outside the bounds of the statute.
 
 
 32
 A much more common application of the 'blocking charge' rule and an example of the general absence of district court jurisdiction over representation matters was the subject of our recent decision in N.L.R.B. v. Big Three Industries, Inc., supra. In that case, the General Counsel charged, among other things, that the employer had refused to bargain with the union in good faith. The Board eventually found the charges to be true and the ensuing bargaining order was enforced by this Court. While the unfair labor practice charges were following this course, a group of employees filed a decertification petition with the Board. When this petition was dismissed pursuant to the 'blocking charge' rule, the employees filed suit in district court to compel the NLRB to process their petition. The district court found that it had no jurisdiction to entertain the case, and we affirmed. There was no per se application of the rule as there had been in Templeton and Surratt. The Board had reviewed the facts of the case and found that the major reason for the petition was that the union had accomplished nothing at the bargaining table. The pending unfair labor practice charges, if true, were of the sort that might attribute that lack of accomplishments to the employer rather than to the union. This was just the sort of situation that the NLRB had in mind when it inaugurated the 'blocking charge' rule in 1937. In affirming the dismissal of the petition, the Board explained: 'In these circumstances, to find the existence of a real question concerning representation on the basis of the instant petition, in the face of the current litigation in the complaint case of the Employer's alleged refusal to bargain in good faith, would . . . be contrary to the statutory scheme of the Act.' Big Three Industries, Inc., 1973, 201 N.L.R.B. No. 76, 82 L.R.R.M. 1411, 1412.
 
 
 33
 The Templeton-Surratt rule 'that the pendency of unfair labor practice charges does not per se warrant the Board's blocking, without investigation, a decertification petition filed by unit employees,' 497 F.2d at 53, was obviously inappropriate in Big Three Industries, and we so held, after indicating that the assertion of district court jurisdiction in such a case was something to be expected rather less often than a bloom on a century plant.
 
 IV.
 
 34
 When we set the circumstances of this case beside those of Templeton and Surratt on the one hand and Big Three Industries on the other, we readily perceive that the present case presents a garden variety application of the 'blocking charge' rule. In this case, the alleged unfair labor practices underlying the dismissal of the petition had not grown stale by the time the petition was filed; on the contrary, the Union and the NLRB's General Counsel contend that Winn-Dixie has made every effort to keep them as fresh as possible. Nor do we find that mechanistic application of the rule that the Court found so odious in Templeton and Surratt. Although the NLRB has not yet decided the merits of the charges against Winn-Dixie, the General Counsel has found enough substance to the allegations to form the basis of a complaint. The Board carefully considered whether the 'blocking charge' dismissal was proper in this case, 'balancing the interaction between an employer's obligation . . . to bargain with a duly designated representative and the employees' right . . . to terminate the statutory status of said representative.' Winn-Dixie Stores, Inc., 1974, No. 12-RD-245, and determined that the facts of this case warranted dismissal of the petition.[10]
 
 
 35
 There is in the Board action here neither arbitrariness nor abuse of discretion; there is instead the reasoned utilization of a practice long-since legitimized by experience and well-suited to the particular facts of this controversy. This application of the rule is distinguishable, if at all, from the ordinary 'blocking charge' dismissal only by the length of the labor dispute of which it forms a part. The record shows that the NLRB has remained well within the boundaries of its statutory mandate with respect to representation questions. Since that is the case, the district court had no subject matter jurisdiction over plaintiffs' lawsuit.
 
 
 36
 This Court had a duty in Templeton and Surratt to adopt a very limited exception to the general rule of review of representation questions. We have a corresponding duty to police that exception to ensure that a rule designed to further the purposes of the National Labor Relations Act is not extended beyond its fragile scope so as to do mischief where it was meant to do good. Administrative agencies such as the NIRB are set up to work their magical expertise and courts should interfere with the Board's congressionally-bequeathed magician's props in representation cases only when it is certain that no rabbit will be pulled from the NLRB's hat.
 
 
 37
 The order of the district court is vacated and the case is remanded with instructions to dismiss the complaint.
 
 
 38
 Vacated and remanded.
 
 
 
 [1]
 While we are in no position to discuss the merits of the Union's charges against Winn-Dixie, we note that Winn-Dixie is no stranger to this Court in unfair labor practice proceedings. See Winn-Dixie Stores, Inc. v. N.L.R.B., 5 Cir. 1969, 413 F.2d 1008; N.L.R.B. v. Winn-Dixie Stores, Inc., 5 Cir. 1969, 414 F.2d 786; N.L.R.B. v. Winn-Dixie Stores, Inc., 5 Cir. 1966, 361 F.2d 512; N.L.R.B. v. Winn-Dixie Stores, Inc., 5 Cir. 1965, 353 F.2d 76; N.L.R.B. v. Winn-Dixie Stores, Inc., 5 Cir. 1963, 324 F.2d 502
 
 
 [2]
 Plaintiffs seek 'an order compelling the N.L.R.B. to process their Decertification Petition in accordance with section 9(c) of the National Labor Relations Act.' Supplemental Brief for Plaintiffs-Appellees at 2. If that is truly the extent of the relief they seek, then we wonder why the Board's order of January 18, 1974, affirming the dismissal of plaintiffs' decertification petition on the grounds that 'there is no reasonable cause to believe that the instant petition at this time raises a real question of representation' does not so completely comply with the requirements of section 9(c) as to render plaintiffs' action moot. We will not seek refuge in mootness because we would be adding our mite to this intolerable delay. Furthermore, we hesitate to venture into this conflict when such a course might interfere with an administrative decision on the merits of decertification
 
 
 [3]
 29 U.S.C. 160(f)
 
 
 [4]
 29 U.S.C. 151-168
 
 
 [5]
 Although it is true that this indirect method of judicial review imposes considerable delays upon election challenges, 'it is . . . obvious that Congress . . . intended to impose precisely such delays.' Boire v. Greyhound Corp., supra, 376 U.S. at 477, 84 S.Ct. at 897, 11 L.Ed.2d at 853
 
 
 [6]
 29 U.S.C. 159(c)(1)
 
 
 [7]
 29 U.S.C. 157
 
 
 [8]
 The policy is summarized in the NLRB Field Manual P11730 as:
 a general policy of holding in abeyance any representation case . . . where pending unfair labor practice charges filed by a party to the (representation) case are based upon conduct of a nature which would have a tendency to interfere with the free choice of the employees in an election, were one to be conducted on the petition . . . Where the pending charges allege violations . . . of Section 8(a)(2), 8(a)(5) and 8(b)(7) of the Act, such a policy applies even where the person filing the charges is not a party to the (representation) case, and the petition may ultimately be dismissed, since the nature of the alleged violations of those sections of the Act and the remedies which could be provided therefor, might condition or preclude the existence of the question concerning representation sought to be raised by the petitioner.
 
 
 [9]
 The Templeton court placed considerable emphasis upon the fact that the decertification petition there had been filed by employees. The Court felt that such a petition was less likely to be a cover for delaying tactics than petitions submitted by employers or rival unions. We have shown, however, that an employee petition is not necessarily to be treated differently from any other, and it is certainly true that if an employee petition were actually prompted and supported by an employer or a union, then the petition would lose any favored status that it might otherwise enjoy
 
 
 [10]
 In reaching its determination, the Board ruled that:
 shortly after the bargaining representative was recertified in July (1969), the Employer allegedly took numerous unilateral actions and imposed an unlawful condition with respect to a bargaining on pensions in violation of its bargaining obligation, which tended to erode the representative's majority status and to undermine its bargaining efforts. If these allegations of the complaint, which are now being litigated, are sustained, the appropriate remedy would include an affirmative bargaining order and extension of the certification year even though the representative may now have lost its majority status. In these circumstances, the Board is of the view that it would be contrary to the statutory scheme of the Act to sanction an election now, while the bargaining obligation of the Employer arising out of the earlier election is currently in litigation.