Al MUMFORD et al., Plaintiffs-
Appellants,

v.

James M. GLOVER et al., Defendants-
Appellees.

No. 73–3037.

United States Court of Appeals,
Fifth Circuit.

Nov. 11, 1974.

William L. Irons, James D. Forstman, Birmingham, Ala., for plaintiffs-appellants.

William F. Gardner, Sydney F. Frazier, Jr., Birmingham, Ala., for Ala. Pipe, and others.

William E. Mitch, Birmingham, Ala., for Local 324, Glover, and others.

Before BELL, GOLDBERG and CLARK, Circuit Judges.

GOLDBERG, Circuit Judge:

This case stands for the proposition that those with a cause of action should not be barred from the fields of advocacy merely because they have trouble making their way through the jurisdictional thicket. We find ourselves cutting the path which will allow plaintiffs to state their case in district court.

■ The district court dismissed the plaintiffs' complaint "for failure to state a claim upon which relief can be granted." Upon review here for the limited purpose of determining the validity of the dismissal, we look to see if there are any facts which plaintiffs could prove that would entitle them to relief. Czosek v. O'Mara, 1970, 397 U.S. 25, 90 S. Ct. 770, 25 L.Ed.2d 21; Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed.2d 80; Hooper v. Mountain States Securities Corp., 5 Cir. 1960, 282 F.2d 195, cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693. As a part of this assessment, we must accept the facts al-

leged to be true. Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp., 1965, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247; Hargrave v. McKinney, 5 Cir. 1969, 413 F.2d 320.

Plaintiffs are members of Local No. 324 of the International Molders and Allied Workers Union [the Union or Local 324] and are employed by the Mead Corporation [Mead or the Company]. The Union and Mead entered into a collective bargaining agreement on February 19, 1972. Article 19 of this agreement carried forward a previous agreement setting up and regulating a pension plan. Section 20 of Article 19 read: "The above plan shall not be subject to renegotiation until June 30, 1972." The Agreement itself was to remain in force through December 31, 1974, and thereafter until one party or the other gave 60 days notice of termination.

Plaintiffs-appellants allege that the Union scheduled a meeting for June 3, 1972, to elect members to the committee which would bargain for changes in the Pension Plan. Plaintiffs prepared for that meeting by selecting two nominees dedicated to terminating the pension fund from each Mead plant. They also endeavored to insure that a majority of the membership would show up at the meeting so that their nominees would be elected. But when the meeting was held officers of Local 324 announced that they could not get order and then adjourned the meeting. These officers announced that the meeting would be rescheduled. But two days later employees learned that the president of the Union had instead appointed a bargaining committee on his own. At a subsequent union meeting, on June 17, Union officers assured the membership that a vote would be taken on any plan which this committee brought back. During the ensuing weeks various employees demanded of Union leadership orally and in writing that the pension plan not be extended. On August 15 a petition to impeach the Union leadership, signed by 1,000 of the Local's 1,800 members, was presented to the Union. On August 18 an amendment to the Pension Plan was executed by the Union and Mead without ratification by the Union membership. Subsequently a petition to rescind the agreement was filed by 1,300 of the Local's membership. Officers of the Local ignored that petition.

Plaintiffs filed this suit against Mead, the Union, and trustees of the Pension Trust on July 17, 1972, seeking a termination of the Pension Plan and a refund of involuntary payroll deductions currently being held by the Pension Trust.

Subsequent to the dismissal below, the Union and the Company entered into an agreement whereby the Pension Fund refunded $1,700,000 to the class plaintiffs. This sum was made up of employee contributions to the Pension Fund plus interest on those contributions. Thus, at the time of oral argument the appellees had dispersed most of the booty. Except for incremental benefits, infra, and possible attorney's fees we would have a classic case of mootness. We were not advised of the division of the spoils except by two sentences at the end of Appellant Mead's brief and in Appellee's "Alternative Motion for Remand for Determination of Attorney's Fees."

Disconcerting as this may be, forcing us to judge in a very sensitive area and in a near vacuum, we do so, knowing of possible remaining remnants on the battlefield. What started out as a potential armageddon will end with a minor skirmish requiring us to fire jurisdictional cannon which will be heard on future battlegrounds.

Plaintiffs-appellants claim that § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 [1] gives federal district court jurisdiction over this suit.

1. 29 U.S.C. § 185(a) reads:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations,

"Plaintiffs further aver that the Pension Plan . . . has expired and contrary to the provisions contained in said Pension Plan and the collective bargaining agreement . . . is being maintained in violation of the foregoing agreements. . . ."

■ A further claim, cognizable under Section 185 when it arises in the context of a collective bargaining agreement, was that the Union leadership abused their duty of fair representation.

"Workers further contend that Local 324 . . . failed to fairly represent the employees within the meaning of Section 159 of Title 29, U.S.C. A. . . . in executing an agreement contrary to the written and oral demands of employee-members. The affidavits submitted . . . established that bad faith and hostile discrimination in the Union's breach of their statutory duty by signing an agreement seeking to breathe life into a defunct pension plan." [2]

■ The contention that the collective bargaining agreement was violated by continuation of the Pension Plan is based on the Appellants' apparent belief that the phrase in Article 19, Section 20 "shall not be subject to renegotiation" means "shall terminate." [3]

We do not read the agreement as plaintiffs do, and we therefore find that there was no violation of the collective bargaining agreement in the continuation of the Pension Plan after June 30, 1972. The phrase "shall not be open to renegotiation until June 30, 1972" in its plain sense merely prohibits alteration before that date. It does not suggest that renegotiation or any other act is required in order for the plan to remain in effect beyond June 30, 1972. Certainly the documents presented to this Court do not suggest a different intention on the part of those who concluded the first agreement. Nothing in the collective bargaining agreement supports such an interpretation of "renegotiate" and there are no directives for the Pension Fund in the event of termination. The prospect of termination is not covered in the second document submitted, the "Rules and Regulations of the Pension Plan." Article IX, Section 2 of the Rules and Regulations reads: "If this Pension Plan is discontinued, the assets then remaining in the Pension Fund after providing for the expenses of the Plan, shall be allocated in the following manner. . . ." Rules and Regulations at 20. The section is stated in the conditional; if "renegotiate" was intended to mean "terminate" it is unlikely that the termination provision would have been so worded.

Admittedly, when a pension provision provides for renegotiation one of the possibilities opened is that the negotiators may decide to terminate the plan. But the possibility is not the certainty. The only certainty encompassed by the term "renegotiation" is that the parties are permitted to negotiate about the contents of the plan once again. This is what the Union and the Company did, and, in itself, this did not violate the contract between Local 324 and Mead. We therefore agree with the district court that plaintiffs did not state a cause of action when they contended that Union and Company had violated the terms of the collective bargaining

may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. Appellants also contend that the collective bargaining agreement violates Ala.Code tit. 26, § 375(5) in that it makes contributions to the pension fund a condition of employment. This argument is completely without merit. Ala.Code tit. 26, § 375(5) reads:

"No employer shall require any person, as a condition of employment or continuation of employment, to pay any dues, fees or other charges of any kind to any labor union or labor organization."

The money here was paid into a pension trust and not to, or for the benefit of, the Union.

3. Remarkably, this point is assumed throughout the Appellants' Complaint and Brief. Not a sentence argues to the point.

agreement in not terminating the Pension Plan on June 30, 1972.

■ We must now address ourselves to the issues raised by the allegation that the Union has abused its duty of fair representation. Such a duty is legally compelled in contexts other than that in which a labor organization and employer are accused of violating contract terms. There is a duty of fair representation in all Union dealings implicit in the Congressional grant to unions, in 29 U.S.C. § 159(a),[4] of the exclusive power to represent all employees in the collective bargaining unit. Vaca v. Sipes, 1967, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842, 850; Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 337, 73 S.Ct. 681, 685, 97 L.Ed. 1048.

■ This Court has never ruled on the question of whether Section 185 might be used as a jurisdictional base for a claim of abuse of the duty of fair representation outside of the contractual context. Today we hold that Section 185 does not provide such jurisdiction. The plaintiffs-appellants' essential assertion in the instant case is not that any specific term of the collective bargaining agreement, such as the proper operation of a seniority clause, was violated. Rather they claim that the Union had failed to fairly represent them in the administration of the Pension Plan. The existence of a pension plan clause provides the context within which the Union must act, but there is no stipulation in the clause itself which the Union or

Mead has violated. See Nedd v. United Mine Workers, 3 Cir. 1968, 400 F.2d 103. Section 185 provides jurisdiction only in "suits for *violation of contracts* between an employer and a labor organization . . . or between any such labor organizations" (emphasis supplied).[5] This section expressly requires a violation of a labor contract before it may be employed as a jurisdictional device. And the literal meaning of the statute is the first reference for Congressional intent. Perry v. Commerce Loan Co., 1966, 383 U.S. 392, 400, 86 S.Ct. 852, 15 L.Ed.2d 827, 833, quoting United States v. American Trucking Associations, 1940, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345, 1350; Flora v. United States, 1958, 357 U.S. 63, 65, 78 S.Ct. 1079, 2 L.Ed.2d 1165, 1167; Ray Baille Trash Hauling, Inc. v. Kleppe, 5 Cir. 1973, 477 F.2d 696, 707. It is on this basis that we decide that Section 185 will not serve to bring this action before a federal court. *Accord,* Leskiw v. Local 1470, Electrical Workers, 3 Cir. 1972, 464 F.2d 721; Adams v. Budd Co., 3 Cir. 1965, 349 F.2d 368; Palnau v. Detroit Edison Co., 6 Cir. 1962, 301 F.2d 702.

■■ This Court has held, however, that federal jurisdiction may be sustained when granted by a federal statute even if the plaintiff has not relied upon that statute in the district court. Paynes v. Lee, 5 Cir. 1967, 377 F.2d 61, 63; *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1206 at 77–

4. 29 U.S.C. § 159(a) provides:
    Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay; wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not

inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment.

5. In Deaton Truck Line, Inc. v. Local 612, Teamsters, 5 Cir. 1962, 314 F.2d 418, this Court held that Section 185 is "broad enough to include any agreement significant to the maintenance of labor peace between the employer and the Union." 314 F.2d at 422. But nowhere does that opinion suggest that a cause of action is provided in the absence of the violation of an agreement.

78 (1969). Therefore, we conclude that this suit can move forward under the jurisdictional aegis of 28 U.S.C. § 1337.[6] As previously noted, the statutory duty of fair representation is implied under Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a). The N.L.R.A. is an "Act of Congress regulating commerce," Capital Service, Inc. v. N.L.R.B., 1954, 347 U.S. 501, 504, 74 S.Ct. 699, 702, 98 L.Ed. 887, 891, so that a cause of action for the breach of Section 9(a) is one "arising under" a statute regulating commerce within the meaning of Section 1337. This Court has previously found jurisdiction under Section 1337 for controversies involving the National Labor Relations Act in Templeton v. Dixie Color Printing Co., 5 Cir. 1971, 444 F.2d 1064, 1067 and Boire v. Miami Herald Pub. Co., 5 Cir. 1965, 343 F.2d 17, 20. Four other circuit courts have found that the "arising under" jurisdiction encompasses actions involving the duty of fair representation. Retana v. Local 14, Apartment Operators, 9 Cir. 1972, 453 F.2d 1018, 1021–1022; Waters v. Wiscon. Steel Works, 7 Cir. 1970, 427 F.2d 476, 490; de Arroyo v. Sindicato de Trabajadores Packinghouse, 1 Cir. 1970, 425 F.2d 281, 283 n. 1; Nedd v. United Mine Workers, 3 Cir. 1968, 400 F.2d 103, 106. This conclusion is buttressed by Tunstall v. Brotherhood of Locomotive Firemen, 1945, 323 U.S. 210, 213, 65 S.Ct. 235, 237, 89 L.Ed. 187, 193, in which the Supreme Court held that Section 1337 provided a basis for district court jurisdiction over suits for abuse of the duty of fair representation implied from "comparable provisions of the Railway Labor Act." Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 337, 73 S.Ct. 681, 686, 97 L.Ed. 1048, 1057.

■ The jurisdiction thus bestowed by Section 1337 need not be snatched away by the doctrine of pre-emption. This Court had once upheld the primacy of the N.L.R.B. in duty of fair represen-

tation cases. Local 12, Rubber Workers v. NLRB, 5 Cir. 1966, 368 F.2d 12, involved allegations of a breach of the duty of fair representation, predicated directly on Section 9(a) of the Act and not on 29 U.S.C. § 185. In sending the case to the N.L.R.B. for consideration the Court noted:

". . . we are convinced that the rights of the individual employees to be fairly represented can be more fully achieved within the spirit of the act by recognizing the Board as the appropriate body to meet the challenge of uniformly administering standards of fair representation."

368 F.2d at 23.

But this opinion preceded the Supreme Court's ruling on the matter in Vaca v. Sipes, 1967, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842. In *Vaca* the plaintiff asserted a Section 185 breach and the question presented was one of state court pre-emption. But the Supreme Court referred to our decision in *Rubber Workers*, not a Section 185 case, in capsuling the Circuit Court disputes which helped foster its discussion. The issue it then addressed was that of pre-emption in general and not as limited to the Section 185 context. The reasoning of the Court is worth quoting at length:

A primary justification for the pre-emption doctrine—the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose—is not applicable to cases involving alleged breaches of the union's duty of fair representation. The doctrine was judicially developed in Steele and its progeny, and suits alleging breach of the duty remained judicially cognizable long after the NLRB was given unfair labor practice jurisdiction over union activities by the L.M.R.A. Moreover, when the Board

---

6. 28 U.S.C. § 1337 reads:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regu-

lating commerce or protecting trade and commerce against restraints and monopolies.

declared in Miranda Fuel that a union's breach of its duty of fair representation would henceforth be treated as an unfair labor practice, the Board adopted and applied the doctrine as it had been developed by the federal courts. See 140 N.L.R.B., at 184–186. Finally, as the dissenting Board members in Miranda Fuel have pointed out, fair representation duty suits often require review of the substantive positions taken and policies pursued by a union in its negotiation of a collective bargaining agreement and in its handling of the grievance machinery; as these matters are not normally within the Board's unfair labor practice jurisdiction, it can be doubted whether the Board brings substantially greater expertise to bear on these problems than do the courts, which have been engaged in this type of review since the Steele decision . . . .

[T]he duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law. Were we to hold

. . . . . .

that the courts are foreclosed by the NLRB's Miranda Fuel decision from this traditional supervisory jurisdiction, the individual employee injured by arbitrary or discriminatory union conduct could no longer be assured of impartial review of his complaint, since the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint. See United Electrical Contractors Assn. v. Ordman, 366 F.2d 776, cert. denied, 385 U.S. 1026 [87 S.Ct. 753, 17 L.Ed.2d 674]. The existence of even a small group of cases in which the Board would be unwilling or unable to remedy a union's breach of duty would frustrate the basic purposes underlying the duty of fair rep-

resentation doctrine. For these reasons, we cannot assume from the NLRB's tardy assumption of jurisdiction in these cases that Congress, when it enacted N.L.R.A. § 8(b) in 1947, intended to oust the courts of their traditional jurisdiction to curb arbitrary conduct by the individual employee's statutory representative.

386 U.S. 181–183, 87 S.Ct. 903, 912, 17 L.Ed.2d 852–853 (footnotes omitted).

This position was reaffirmed in Amalgamated Assn. of Street Employees v. Lockridge, 1971, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473, wherein the Court noted:

"[I]n Vaca v. Sipes . . . we held that an action seeking damages for injury inflicted by a breach of a union's duty of fair representation was judicially cognizable in any event, that is, even if the conduct complained of was arguably protected or prohibited by the National Labor Relations Act *and whether or not the lawsuit was bottomed on a collective agreement.*"

403 U.S. at 299, 91 S.Ct. at 1924, 29 L.Ed.2d at 490 (emphasis added).

This resolution of the pre-emption question is all the more compelled by the treatment of duty of fair representation cases by the N.L.R.B. In Miranda Fuel Co., 1962, 140 N.L.R.B. 181, enforcement denied, 2 Cir. 1963, 326 F.2d 172, a divided Board held that a breach of the duty of fair representation violated Section 8(b) of the Act. The majority held that Section 7 gave employees the right to be free from unfair treatment at the hands of their exclusive bargaining agent and "that Section 8(b)(1)(A) of the Act accordingly prohibits labor organizations, when acting in a statutory representative capacity, from taking action against any employee upon considerations or classifications which are irrelevant, invidious or unfair." 140 N.L.R.B. at 185.[7] Since *Miranda*, however,

---

7. Thus, technically, N.L.R.B. Jurisdiction is based on a Section 7 implication of the duty

of fair representation whose violation is brought before the Board under Section

the Board has been retreating from the application of a broad duty of fair representation criterion. Rather, it has found violations on traditional 8(b)(1)(A) and 8(b)(2) grounds: most generally where there were allegations of racial discrimination or a breach of the "duty of fair dealing," which duty merely requires notice to a member of his union obligations before the union may request that the employer discharge him for avoiding them. *See, generally*, Note, Labor Law Preemption and Individual Rights, 51 Tex.L.Rev. 1037, 1074–84 (1973). Thus the application of *Miranda* might, in practice, rob a plaintiff of his cause of action if the cause does not fit in one of these narrow niches. In the absence of an overriding reason, this Court is loathe to make an empty ritual of a plenary right.

■ On remand, the court below should consider whether the facts alleged by plaintiffs are true, and whether in their full presentation they reveal a breach of the duty of fair representation. A legally cognizable breach in this case could stem from proof of Union hostility towards the plaintiff class. Vaca v. Sipes, *supra*; Amalgamated Association of Street Employees, *supra*; Cunningham v. Erie, R.R., 2 Cir. 1966, 358 F.2d 640. It might also stem from proof that Union leadership had treated the wishes of membership in a perfunctory fashion. While perhaps not constituting a breach under the "hostility" classification, evidence of nadiral disinterest in the desires of membership

might make out a case of arbitrary treatment. *See* Local 12, Rubber Workers v. NLRB, 5 Cir. 1966, 368 F.2d 12, 18; Griffin v. U. A. W., 4 Cir. 1972, 469 F.2d 181; Day v. U. A. W. Local 36, 6 Cir. 1972, 466 F.2d 83; de Arroyo v. Sindicato de Trabajadores Packinghouse, 1 Cir. 1970, 425 F.2d 281, cert. denied, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114; Thompson v. Internat. Assn. of Machinists, E.D.Va.1966, 258 F.Supp. 235. Of course, the mere fact that a new plan was negotiated does not in itself indicate that Union leadership was acting with hostility or disregard for membership. Leadership might very well show that they were trying to act in the best interests of all union members and were devoting sufficient energies to that representational effort. On their face, the facts alleged evidence neither invidious classification nor disparate treatment of membership, the other grounds for finding breach of the duty of fair representation.[8]

■ As noted above, Appellees have already refunded pension contributions, plus interest, to employees. Thus, if hostility or disinterest on the part of the Union towards its members is proven in the district court, relief granted from the Union should be limited. Relief would amount to the incremental damage caused to the membership by the delay in the refund from the time that renegotiation could begin to the time when refunds were actually made. Should plaintiffs-appellants prevail or accept a settlement their attorneys should be awarded a reasonable sum for bringing

8(b)(1)(A). The courts find jurisdiction through a Section 9 substantive violation and 28 U.S.C. § 1337 jurisdiction. But the different grounds do not in themselves appear to compel substantive distinctions in disposition of the cases.

8. It should be noted that in this case the plaintiffs-appellants allege that they constitute a majority of the Union membership. All previous fair representation cases which have come to the attention of this Court involved the allegation of either an individual or minority of the membership. Majority status is usually sufficient to insure that

one's view is heard. But while this factor greatly increases the probability of fair representation it does not bar a suit when fair representation fails. Other avenues of relief generally open to a majority might not be adequate in the present case. Plaintiffs might not want to institute a decertification action because they may believe that the Union is adequately representing their interests outside of the particular action they are bringing. And internal union democracy, such as election of officers, may not be available in sufficient time to stave off the damage done by Union adherence to an undesirable contract.

this appeal and for prosecuting the case upon remand.

■ In addition, if the court below finds that the plaintiffs' original suit, even though dismissed, precipitated the refund, then counsel is entitled to recover the reasonable costs of bringing the original suit. Kahan v. Rosenstiel, 3 Cir. 1970, 424 F.2d 161. Such fees should be prorated against the funds settled upon each of the plaintiffs by the Pension Plan. Where plaintiff class members are without the funds to reimburse attorneys, such funds may be appropriated from a member's share of any new fund which might be created by relief in the trial on remand.

Reversed and remanded.