Robert Wayne STOREY, et al.,
Plaintiffs-Appellants,

v.

LOCAL 327, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America;  and the Kroger Co., Inc., Defendants-Appellees.

No. 83–5747.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 7, 1985.

Decided March 29, 1985.

---

690 (1980), in which a similar statutory scheme was construed to permit such claims as that of Mrs. Minvielle.

James W. Price, Jr. (argued), Nashville, Tenn., for plaintiffs-appellants.

Cecil D. Branstetter, Branstetter, Kilgore & Stranch, C. Dewey Branstetter, Jr. (argued), Nashville, Tenn., for Local 327.

William N. Ozier, Nashville, Tenn., for Kroger.

L.N.D. Wells (argued), Mullinax, Wells, Baab & Cloutman, Dallas, Tex., for Intern. Broth.

Before LIVELY, Chief Judge, and ENGEL and MARTIN, Circuit Judges.

LIVELY, Chief Judge.

The question for decision in this appeal is whether a claim that a union breached its duty of fair representation during negotiations with an employer at a time when there was no collective bargaining agreement in effect states a cause of action within the jurisdiction of a federal court. The district court held that the conduct complained of was an unfair labor practice and that the claim was within the exclusive jurisdiction of the National Labor Relations Board. The district court recognized that section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) (1982) [1] grants jurisdiction to district courts in suits for breach of contracts between employers and labor organizations, but held that this section does not apply in the absence of a collective bargaining agreement. We agree with the district court that section 301(a) of the Labor Act does not provide a basis for jurisdiction in this case, but conclude that jurisdiction over actions based on a union's breach of its duty of fair representation are not exclusively vested in the National Labor Relations Board, even though that breach may also be an unfair labor practice. This duty arises out of the exclusive power granted unions by section 9(a) of the Labor Act, 29 U.S.C. § 159(a) (1982) [2] and when breached

1. Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a).

2. Section 9(a) provides in pertinent part:

Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive

gives rise to a claim within the jurisdiction of the district courts under 28 U.S.C. § 1337 (1982).[3] We reverse the order of the district court dismissing this action for lack of subject matter jurisdiction.

## I.

### A.

Suit was filed as a class action by ten employees of The Kroger Co. (Kroger) who claimed that Teamsters International and Teamsters Local 327 which represented their bargaining unit breached the union's duty to represent all members of the collective bargaining unit fairly, and charged that Kroger conspired with the union to "reduce" the conditions and benefits of their employment. More specifically, the plaintiffs claimed that Local 327 failed to represent the members of the union fairly in negotiating a collective bargaining agreement with Kroger, with the result that the union "bargained away substantial benefits relating primarily to seniority." The complaint charged the International Union with failing to furnish a skilled negotiator to aid in the negotiations when requested to do so by the negotiating committee. The negotiations took place after an earlier collective bargaining agreement between Kroger and Local 327 had expired.

The complaint also alleged that the business agent and president of Local 327 conspired with Kroger in formulating an agreement which contained terms and conditions which were contrary to union policies and which diminished the rights of the plaintiffs and the class they sought to represent (all unit members in two Kroger warehouses in the Nashville, Tennessee area). The complaint further alleged that Local 327 and its business agent and president fraudulently changed the results of a membership vote on the proposed collective bargaining agreement to reflect ratification when in fact the proposed agreement had been rejected. Finally, the complaint asserted that the agreement negotiated by Local 327 and Kroger contained a provision which discriminated against female members of the unit by prescribing a lower wage scale for unit employees in one of the warehouses than in the other. Virtually all employees in the warehouse with the lower wage rate were women.

### B.

In their jurisdictional statement the plaintiffs relied upon sections 9(a) and 301 of the Labor Act in addition to 28 U.S.C. § 1337 and 28 U.S.C. § 2201 (Declaratory Judgment Act). Paragraph 13 of the complaint stated, in part:

The actions of the Defendants in the collective bargaining were for arbitrary and capricious reasons and for the own self interests of the officers. Not only did defendant Kroger agree and accede to the contract of Defendants Local 327 and International, but actually conspired with them and thus became a party to the actions. Defendants Local 327 and International have failed and refused to adequately represent Plaintiffs and members of their class in collective bargaining and with employees and are thus in violation of the duty imposed upon said Defendant unions by Sec. 9(a) of NLRA, 29 U.S.C. 159(a).

As relief the plaintiffs sought a declaratory judgment that the conduct of the union defendants constituted a breach of their duty of fair representation to the plaintiffs and their class in collective bargaining with their employer and that Kroger's alleged conduct was an unfair labor practice under section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1). In addition, the plaintiffs sought a declaration that the collective bargaining agreement executed March 8, 1983

---

representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment....

29 U.S.C. § 159(a).

**3.** 28 U.S.C. § 1337(a) provides in pertinent part:

(a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: ....

between Local 327 and Kroger was null and void, an injunction to prevent the agreement's continuance in effect, "and that the Defendants be ordered to enter into new collective bargaining." Finally, the plaintiffs requested the court to order retroactive wage increases for the employees alleged to have been the subject of discrimination on the basis of sex.

## II.

### A.

The plaintiffs acknowledge that jurisdiction of the courts to hear many labor-related matters has been pre-empted by Congress and given to the National Labor Relations Board, but contend this is a proper case for judicial determination and that a court decision in its favor will not conflict with national labor policy. Arguing that the Supreme Court has permitted employees to sue unions pursuant to section 301 when the conduct complained of constituted both an unfair labor practice and a breach of the duty of fair representation, they quote *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967):

[T]he jurisdiction of the Court is no more destroyed by the fact that an employee as part and parcel of his § 301 action finds it necessary to prove an unfair labor practice than it is by the fact that the suit may involve an unfair labor practice by the employer himself.

The plaintiffs also cite a similar statement by this court in *Hill v. Iron Workers Local Union No. 25*, 520 F.2d 40, 43 (6 Cir., 1975).

At oral argument counsel for the plaintiffs identified this court's decision in *Farmer v. ARA Services, Inc.*, 660 F.2d 1096 (6 Cir., 1981), as the strongest case in support of their position. There are many similarities between *Farmer* and the present case. In *Farmer* a group of female employees charged their union and employer with negotiating collective bar-

gaining agreements which contained unequal wage rates for sex-segregated classifications. The complaint charged violation of section 8(b) and 9(a) of the Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (1982). Specifically, the plaintiffs in *Farmer* charged the union with breach of its duty of fair representation in negotiating discriminatory collective bargaining agreements and in failing to represent the plaintiffs in grievance proceedings brought pursuant to those agreements. The plaintiffs in this case quote the following language from *Farmer:*

In addition to its failure to arbitrate claims, Local 1064 breached its duty of fair representation by negotiating and entering into collective bargaining agreements, the provisions of which either were not adequately explained to the membership prior to ratification or which varied from the terms as explained.

### B.

The defendants contend that the Board has exclusive jurisdiction over claims of unfair labor practices. Under the preemption doctrine as articulated by the Supreme Court in *San Diego Buildings Trade Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), neither state nor federal courts have subject matter jurisdiction over claims which implicate national labor policy. This is so because "Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience." *Id.* at 242, 79 S.Ct. at 778. The union defendants argue that failure of a union to comply with its section 9(a) duties as exclusive bargaining agent is a violation of section 8(b)(1)(A),[4] and thus an unfair labor practice. This being so, the defendants assert, the present case is clearly subject to application of the pre-emption doctrine enunciated in *Garmon:*

---

**4.** Section 8(b)(1)(a) provides:

It shall be an unfair labor practice for a labor organization ... to restrain or coerce employ-

ees in the exercise of the rights guaranteed in section 157 (the rights to self-organization, collective bargaining, etc.).

When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

359 U.S. at 245, 79 S.Ct. at 779.

The union defendants also rely on language in *Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), and *Sears Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), two decisions which deal with pre-emption. Arguing that the plaintiffs accomplish nothing by phrasing their complaint in language which omits references to labor policy, the union defendants quote *Lockridge:*

It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern.

403 U.S. at 292, 91 S.Ct. at 1920. Similarly, these defendants note that the Supreme Court in *Sears* stated a test for determining whether jurisdiction over a claim based on conduct prohibited by the Labor Act is pre-empted:

The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to ... or different from ... that which could have been, but was not presented to the Labor Board.

436 U.S. at 197, 98 S.Ct. at 1757.

Kroger makes similar pre-emption arguments and all defendants rely on this court's decision in *Lexington Cartage Co. v. International Brotherhood of Teamsters,* 713 F.2d 194 (6 Cir.,1983). In *Lexington Cartage,* the employer sought a declaration that it had no duty to bargain with a union which had won a representation election and also requested an injunction against an imminent strike. In the course of affirming the district court's dismissal, this court stated:

Under the circumstances and applicable law, the District Court properly concluded that it had no jurisdiction of actions to adjudicate the extent and effect of bargaining obligations imposed upon employers and unions by the NLRA. It has been well settled since *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), that the Board has been designated by Congress as the exclusive forum of original jurisdiction for adjudicating questions of representation or unfair labor practices in violation of the NLRA, and that United States District Courts have no such jurisdiction. 29 U.S.C. §§ 158, 160(a). Mr. Justice Brandeis, noted in *Myers* that:

The grant of that exclusive power is constitutional, because the Act provided for appropriate procedure before the Board and in the review by the Circuit Court of Appeals an adequate opportunity to secure judicial protection against possible illegal action on the part of the Board. * * * The independent right to apply to a Circuit Court of Appeals to have an order set aside is conferred upon *any party aggrieved* by the proceeding before the Board.

303 U.S. at 48–49, 58 S.Ct. at 462. (Emphasis added.)

173 F.2d at 195.

The International union makes the additional argument that the complaint fails to state a claim against it. The only dereliction with which it is charged, the International states, is failure to dispatch an experienced negotiator when requested to do so by the employee negotiating committee. The International contends it had no duty to do this, and therefore there was no failure of representation on its part.

### III.

As applied to labor law the doctrine of pre-emption was first stated by Justice Brandeis in *Myers v. Bethlehem Ship-*

*building Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The National Labor Relations Board had been created by the Wagner Act in 1935 and *Myers* made it clear that the Board was Congress' chosen instrument for effecting national labor policy. As written, *Myers* proclaimed an absolute pre-emption of cases involving unfair labor practices affecting commerce. *Id.* at 48, 58 S.Ct. at 462. The Supreme Court wrote more extensively on the subject of pre-emption in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the decision upon which the defendants in this case place principal reliance. The question in *Garmon* was whether a state court could award damages arising out of peaceful union activity which it could not enjoin. The Supreme Court held in *Garmon* that state courts lacked the power to proceed in such a case, and based the decision on the pre-emption doctrine. The Court stated:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.

*Id.* at 244, 79 S.Ct. at 779. Though state interference with enforcement of rights under the Labor Act was involved in *Garmon*, the Supreme Court made it clear that pre-emption applies to federal district courts as well:

> When an activity is arguably subject to § 7 or § 8 of the Act, the states as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

*Id.* at 245, 79 S.Ct. at 779.

If *Garmon* were the last word on pre-emption we would agree with the district court and the defendants in this case. However, it is clear that there are exceptions to the rule that the National Labor Relations Board has exclusive jurisdiction over controversies involving rights guaranteed by the National Labor Relations Act. Congress amended the N.L.R.A. in 1947 by adoption of the Labor Management Relations Act. Section 301 of the amended Act specifically created jurisdiction in the district courts to hear suits for violation of collective bargaining agreements and contracts between labor organizations. 29 U.S.C. § 185(a) (1982). However, section 301 does not provide the only exception to the rule that the Board has exclusive jurisdiction. In *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court stated that the pre-emption doctrine has never been "rigidly applied to cases where it could not fairly be inferred that Congress intended exclusive jurisdiction to lie with the NLRB." *Id.* at 179, 87 S.Ct. at 911. The Court in *Vaca* reviewed the development of the duty of unions fairly to represent all employees in a bargaining unit, both in collective bargaining with employers and in enforcing collective bargaining agreements once consummated. *Id.* at 177, 87 S.Ct. at 909. It concluded that suits alleging breach of a union's duty of fair representation "remained judicially cognizable long after the NLRB was given unfair labor practice jurisdiction over union activities by the L.M.R.A." *Id.* at 181, 87 S.Ct. at 912 (footnote omitted).

The Supreme Court discussed the exceptions to the preemption doctrine in *Amalgamated Ass'n of Street, Electrical Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 297–98, 91 S.Ct. 1909, 1923–24, 29 L.Ed.2d 473 (1971). The *Lockridge* opinion dealt with the very issue in this case—whether there must be a collective bargaining agreement in force for a court to have jurisdiction. The Court stated:

> Indeed in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), we held that an action seeking damages for injury inflicted by a breach of a union's duty of fair representation was judicially cognizable in any event, that is, even if the conduct complained of was arguably protected or prohibited by the National Labor Relations Act *and whether or not*

*the lawsuit was bottomed on a collective agreement.*

*Id.,* at 299, 91 S.Ct. at 1924 (emphasis added). More recently the Supreme Court has noted that it "has refused to apply the *Garmon* guidelines in a literal, mechanical manner." *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 188, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209 (1978). The *Sears* opinion contains an extensive discussion of the development both of the pre-emption doctrine and the exceptions to its application in particular circumstances. *Id.* at 187–98, 98 S.Ct. at 1752.

### IV.

#### A.

If the plaintiffs had relied only on section 301 as a jurisdictional basis for this action, the absence of a collective bargaining agreement at the time of the alleged misconduct of the defendants would have been significant. Section 301 specifically establishes jurisdiction in the district courts over suits for breach of labor contracts. However, by asserting that the defendants violated section 9(a) of the Labor Act and relying on 28 U.S.C. § 1337, we believe the plaintiffs properly framed their complaint for district court jurisdiction.

The Supreme Court and various lower courts have recognized a cause of action for breach of a union's duty of fair representation which does not depend on section 301 as a jurisdictional base. In *Vaca v. Sipes* the Supreme Court stated that a primary justification for the pre-emption doctrine "is not applicable to cases involving alleged breaches of the union's duty of fair representation." 386 U.S. at 180–81, 87 S.Ct. at 911–12. That "primary justification" was identified as "the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose." *Id.* On the other hand, there are significant reasons for permitting courts to decide fair representation cases. The duty of fair representation

stands "as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Id.* at 182, 87 S.Ct. at 912. Under those provisions an individual employee has no guaranteed access to the Labor Board, "since the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint." *Id.* (citation omitted.)

Though the Supreme Court has never pinpointed the jurisdictional basis for a failure of fair representation action based on alleged union misconduct when no collective bargaining agreement is in effect, we think that section 1337 clearly provides the basis. Such an action is one "arising under [an] Act of Congress regulating commerce" —the Labor Act. The duty of fair representation arises directly out of section 9(a) which makes the representatives chosen by a majority of employees in an appropriate unit the exclusive representative of all employees in the unit for purposes of collective bargaining. *Humphrey v. Moore,* 375 U.S. 335, 342, 84 S.Ct. 363, 368, 11 L.Ed.2d 370 (1964). The duty of fair representation does not arise out of a collective bargaining agreement; it flows from the union's statutory position as exclusive representative and exists both before and after the execution of an agreement.

In a case similar to the present one in many respects, the Fifth Circuit held in *Smith v. Local 25, Sheet Metal Workers International Association,* 500 F.2d 741, 748 (5 Cir., 1974), that claims for breach of a union's duty of fair representation are within the section 1337 jurisdiction of federal district courts even when there is no accompanying claim under section 301 for breach of contract. We adopt this view of the jurisdictional issue, as developed by the Fifth Circuit and several other courts of appeals. *E.g., Anderson v. United Paper Workers International Union,* 641 F.2d 574 (8th Cir.1981); *In re Carter,* 618 F.2d 1093 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981); *Mumford v. Glover,* 503 F.2d 878 (5th Cir. 1974); *Beriault v. Local 40, Super Car-*

*goes & Checkers of I.L. & W.U.*, 501 F.2d 258 (9th Cir.1974).

#### B.

The plaintiffs have placed principal reliance before this court on *Farmer v. ARA Services, Inc.*, 660 F.2d 1096 (6th Cir.1980). Though the result reached by this court in *Farmer* is consistent with our decision in the present case, jurisdiction was not an issue in *Farmer*. There the plaintiffs proceeded under two jurisdictional statutes, section 301 of the Labor Act and Title VII of the Civil Rights Act of 1964. There was no claim of pre-emption. The *Farmer* court did recognize that unions have a duty of fair representation in negotiating collective bargaining agreements, and to that extent supports the plaintiffs' substantive claims in the present case. Today we hold that a district court does have jurisdiction to hear and decide such claims when there is no collective bargaining agreement in existence. The defendants' reliance on *Lexington Cartage Co. v. International Brotherhood of Teamsters*, 713 F.2d 194 (6th Cir.1983), is misplaced. Any superficial similarity between *Lexington Cartage* and the present case is overcome by the fact that there was no issue in *Lexington Cartage* with respect to the union's duty of fair representation. This being so, the court had no occasion to discuss *Humphrey v. Moore, Vaca v. Sipes* and other decisions which have recognized the exception to the pre-emption doctrine which has been developed around the duty of fair representation.

#### V.

Upon remand the district court must consider the defenses, other than lack of subject matter jurisdiction, which were raised in the pleadings. Though Kroger and the International have urged us to affirm their dismissal on alternate bases, we conclude the better practice is to remand for consideration of all issues by the district court. The district court dismissed the lawsuit for lack of subject matter jurisdiction. It never reached the question of whether the complaint stated a claim upon which relief could be granted, much less the merits of the case. One or more of the parties may wish to amend the pleadings in light of this court's decision. Without expressing any view on the merits of the case, we reverse the judgment of the district court and remand for further proceedings. The plaintiffs will recover their costs on appeal.